WILLIAM GLEED, THIRD, vs. AETNA CASUALTY AND
SURETY COMPANY.

Essex. May 4, 1994. - July 29, 1994.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Practice, Civil*, Summary judgment. *Contract*, Insurance. *Insurance*, Motor vehicle insurance, Underinsured motorist, Construction of policy. *Release*.

In an action seeking declaratory relief, the judge incorrectly concluded that the parties' agreement to arbitrate liability issues precluded him from declaring the rights of the parties under the several automobile insurance policies in question. [506-507]

A passenger in an automobile, injured in an accident caused by the driver, who was operating the vehicle with the owner's permission, was entitled to coverage under the terms of Part 5 (optional bodily injury) of the driver's automobile insurance policy after having been paid the policy limit of the automobile owner's insurance. [508-509]

An insurer is not obligated to pay its insured underinsured motorist benefits until the amount of the insured's damages exceeds the automobile insurance policy limits of those legally responsible for the insured's injuries, regardless of whether the insured has released from liability someone legally responsible for his injuries. [509-510]


CIVIL ACTION commenced in the Superior Court Department on November 20, 1990.

The case was heard by *Richard S. Kelley*, J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Beth R. Levenson* for the defendant.

*Carroll E. Ayers* for the plaintiff.

NOLAN, J. This case concerns whether Part 5 (optional bodily injury to others) of the standard Massachusetts automobile insurance policy provides liability coverage to an in-

sured who is the permissive operator of a vehicle not listed on his policy and, if so, whether an injured passenger, who releases the operator from all liability, must nevertheless still exhaust the operator's policy limit before being entitled to underinsured motorist benefits from his own insurer under Part 3 (bodily injury caused by an uninsured or underinsured automobile) of the standard Massachusetts automobile policy. We hold that Part 5 provides coverage in excess of the liability coverage of the vehicle's owner's policy and that an insurer's obligation to pay underinsured motorist benefits is unaffected by its insured's release of someone legally responsible for the insured's injuries. Because of our holding, we vacate the judgment of the Superior Court judge ordering the defendant, Aetna Casualty and Surety Company (Aetna), to pay the plaintiff, William Gleed, III, underinsured motorist benefits in the amount awarded by an arbitrator and remand this case for a declaration that Aetna has no obligation to pay Gleed underinsured motorist benefits.

On October 4, 1984, Gleed was a passenger in an automobile owned by William Bocuzzo and operated by Christopher Daly when it was involved in a single-vehicle accident. Gleed sustained personal injuries as a result. At the time of the accident, Gleed, being a member of his father's household, was an insured under his father's personal automobile policy with Aetna. This policy contained underinsured motorist coverage limits of $250,000 per person. With Aetna's written consent, Gleed settled his claim with Hanover Insurance Company (Hanover), which insured Bocuzzo, for $25,000, the full amount of Bocuzzo's policy. Subsequently, Gleed released Bocuzzo and Daly from all claims resulting from the accident in consideration for Bocuzzo's $25,000 policy limit. There is no evidence that Aetna consented to Gleed's release of Daly. At the time of the accident, Daly, being a member of his father's household, was an insured under his father's personal automobile policy with Commercial Union Insurance Company (Commercial Union). This policy contained optional bodily injury coverage in the amount of $100,000 per person.

On October 4, 1989, Gleed filed a demand for arbitration against Aetna, claiming his entitlement to underinsured motorist benefits pursuant to the policy issued to his father. Aetna refused to arbitrate, claiming that Gleed's damages must first exhaust the $100,000 limit of Daly's policy with Commercial Union in addition to the $25,000 limit of the Hanover policy before being liable to Gleed. Gleed then brought an action for declaratory relief in the Superior Court to determine the existing rights between Aetna and himself. Gleed claimed that, upon his settlement with Daly and Bocuzzo, Aetna became liable for underinsured motorist benefits for his damages exceeding $25,000. He sought a declaration that Aetna must proceed to arbitration to decide the amount of his excess damages. Aetna sought a declaration that it is only liable to pay Gleed for his damages in excess of the combined limits of Bocuzzo's and Daly's policies. The parties submitted a statement of agreed facts. After a hearing and on cross motions for summary judgment, on June 1, 1992, the judge ruled in favor of Gleed and ordered Aetna to proceed to arbitration and to pay the amount of damages awarded by the arbitrator. The judge declined to address Aetna's request, stating that Aetna had agreed to submit liability issues to arbitration.

On June 3, 1992, the parties proceeded to arbitration. At the time, neither party had notice of the judge's ruling in the declaratory judgment action. Aetna submitted to arbitration with the proviso that any determination as to damages would only be paid in accordance with the judge's ruling. Both parties stipulated that the arbitrator was only to decide the amount of Gleed's damages and not any liability issues. On June 11, 1992, the arbitrator decided that Gleed's damages totaled $77,000 and ordered Aetna to pay Gleed $50,000, the difference between this amount and what Gleed had already been paid.[1]

[1] It appears from the record that Gleed received $2,000 in personal injury protection (PIP) benefits from one of the insurers. The record is unclear as to which insurer paid these benefits. In the declaratory judgment action, Aetna did not request the judge to take the payment of PIP bene-

Aetna timely appealed from the judge's order. The Appeals Court, in an unpublished memorandum and order under Appeals Court Rule 1:28, affirmed. *Gleed v. Hanover Ins. Co.*, 35 Mass. App. Ct. 1115 (1993). In upholding the judge's failure to declare that Aetna's liability is only for Gleed's damages in excess of the combined limits of Bocuzzo's and Daly's policies, the court reasoned that, because the vehicle involved in the accident was not listed on Daly's policy, there was no coverage under that policy. We granted Aetna's application for further appellate review. We reverse the judgment of the Superior Court for the following reasons.

As noted above, the judge ruled on the parties' cross-motions for summary judgment based on a statement of agreed facts. "Summary judgment is appropriate when . . . there are no disputed issues of material fact and the moving party is entitled to prevail as a matter of law. Mass. R. Civ. P. 56 (c), 365 Mass. 824 (1974). *Community Nat'l Bank* v. *Dawes*, 369 Mass. 550, 553 (1976)." *Allstate Ins. Co.* v. *Bearce*, 412 Mass. 442, 446 (1992).

In declining to decide whether Gleed's damages would have to exhaust Daly's policy limit of $100,000 in addition to Bocuzzo's policy limit of $25,000 before Aetna becomes liable to Gleed for underinsured motorist benefits, the judge, noting that the parties had agreed to resolve liability issues in arbitration, reasoned that the question required him to decide the liability issue whether Daly was legally responsible for Gleed's injuries. Although the judge was correct in noting that the parties had agreed to submit the issue of Daly's legal responsibility to an arbitrator,[2] he erred in concluding that this precluded him from deciding whether Gleed's damages needed first to exhaust Daly's policy before Aetna is liable to pay underinsured motorist benefits. This is because

---

fits into account, although it did request the arbitrator to do so. The arbitrator complied, and reduced Aetna's liability by $27,000 ($25,000 limit of Bocuzzo's policy plus the $2,000 paid in PIP payments).

[2]By the terms of Gleed's policy with Aetna, the parties agreed to submit liability issues to arbitration if they were unable to reach an agreement.

Aetna could only be liable for underinsured motorist benefits if Daly was legally responsible for Gleed's injuries[3] and, if Daly was legally responsible, Aetna's liability could be resolved by addressing the two coverage issues submitted to the judge. These two issues were: whether Daly's policy provided liability coverage for Daly even though he was the permissive operator of a vehicle not listed on his policy and, if so, whether Aetna is nevertheless obligated to pay Gleed underinsured motorist benefits prior to the exhaustion of Daly's policy limit because Gleed released Daly from liability. The judge should have addressed these issues. These issues merely required an interpretation of the applicable language of the polices in question. *Aetna Casualty & Sur. Co. v. Poirier*, 371 Mass. 257, 259-260 (1976). The judge's failure to address these issues, in practical effect, decided these issues against Aetna. We address both questions and conclude that, assuming Daly was legally responsible for Gleed's injuries, Aetna is only obligated to pay Gleed his damages in excess of the combined limits of Bocuzzo's and Daly's policies. Since this amount is $125,000 and since an arbitrator has found that Gleed's damages total only $77,000, Aetna therefore would have no liability. Thus, regardless of Daly's legal responsibility for Gleed's injuries, Aetna has no liability to pay Gleed underinsured motorist benefits. Before addressing the two coverage issues, we briefly review the relevant policy language and legal principles.

---

[3]As noted above, Gleed's claim against Hanover, Bocuzzo's insurer, was settled for the full policy limit of $25,000. The basis of this claim was Daly's alleged negligence in operating Bocuzzo's vehicle. The basis of Gleed's claim against Commercial Union, Daly's insurer, was also Daly's alleged negligence. By the terms of Aetna's policy with Gleed, Aetna agreed to pay Gleed underinsured motorist benefits "only if the injured person is legally entitled to recover from the owner or operator of the . . . underinsured . . . auto." Thus, since Daly's alleged negligence was the only basis of Gleed's respective claims against Hanover and Commercial Union and since Aetna agreed to pay underinsured motorist benefits only if Gleed is legally entitled to recover from either Bocuzzo or Daly, then, if Daly was not negligent, Aetna would have no obligation to pay.

"[U]nderinsured motorist coverage entitles the policy-holder to recover from *two* sources, the tortfeasor *and* the provider of underinsured motorist coverage" (emphasis supplied). *MacInnis* v. *Aetna Life & Casualty Co.*, 403 Mass. 220, 225 (1988). As a member of his father's household, Gleed was an insured under Aetna's policy. *Vaiarella* v. *Hanover Ins. Co.*, 409 Mass. 523, 526 (1991). Part 3 of this policy provided coverage for personal injuries caused by uninsured and underinsured vehicles: "If the legally responsible person is insured, [Aetna] will pay only if the limits of the responsible person's auto insurance policies . . . are less than the amount of damages due the injured person. In that case, we will pay the balance of the damages up to [$250,000]." This policy comports with the requirements of G. L. c. 175, § 113L, as amended through St. 1980, c. 532. Section 113L was "enacted with the broad objective of ensuring that victims of automobile accidents would be adequately compensated for their injuries when the accidents are caused by the negligence of unidentified motorists or motorists with insufficient or no liability coverage." *Hartford Ins. Co.* v. *Hertz Corp.*, 410 Mass. 279, 285 (1991). Section 113L required all automobile policies issued in this Commonwealth to provide "coverage for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of insured motor vehicles . . . whose policies . . . are insufficient in limits of liability to satisfy said damages, *to the extent that said damages exceed said limits of liability* subject to the terms of the policy (emphasis added)."[4] Thus, by the policy's plain terms, Aetna agreed to pay Gleed underinsured motorist benefits for Gleed's damages that exceed "the limits of the responsible persons' auto insurance policies."

1. *Whether the fact that Daly was operating vehicle not listed on his policy bars coverage under Part 5 of his policy.*

---

[4]Statute 1988, c. 273, § 46, amended G. L. c. 175, § 113L, to make underinsured motorist coverage optional. Our decision would not be affected by the change in language.

Part 5 of Daly's policy provides that "[u]nder this Part, we will pay damages to people injured . . . in accidents *if* you or *a household member is legally responsible for the accident*. . . . This Part is similar to Compulsory Bodily Injury To Others (Part 1). Like the Compulsory Part, this Part pays for accidents involving *your auto* in Massachusetts. Also like the Compulsory Part, this Part does not pay for the benefit of anyone using an auto without the consent of the owner." (Emphasis added.) In reviewing the judge's order, the Appeals Court interpreted the above policy language as eliminating liability coverage because Daly was operating Bocuzzo's vehicle at the time of the accident and not a vehicle listed on the policy. However, in so concluding, the Appeals Court overlooked other pertinent language in Part 5. Part 5 also provides that "[i]f someone covered under this Part is using an auto he or she does not own at the time of the accident, the owner's auto insurance must pay its limits before we pay. Then, we will pay, up to [$100,000], for any damages not covered by that insurance." We do not read these provisions as eliminating coverage because the insured, at the time of the accident, was operating a vehicle not listed on the policy.[5] Instead, we hold that, assuming Daly was legally responsible for Gleed's injuries, Part 5 of Daly's policy provides coverage for Gleed's injuries in excess of Bocuzzo's policy limit of $25,000.

2. *Whether Gleed's release of Daly obligates Aetna to pay Gleed underinsured motorist benefits prior to exhaustion of Daly's policy limit*. As noted above, Gleed released Daly from all liability prior to receiving any proceeds under Daly's policy. In declining to address whether Gleed needed first to

---

[5]However, Part 5 may expressly exclude such coverage. For instance, Part 5 expressly excludes coverage "[f]or injuries resulting from an accident while you or a household member is using an auto *either of you owns or uses regularly*, unless a premium for this Part is shown for that auto on the Coverage Selections Page" (emphasis added). By the statement of agreed facts, it is clear that this exclusion does not apply in this case. Moreover, the existence of this exclusion supports our conclusion that the policy generally covers the permissive use of a third party's vehicle.

exhaust the limit of Daly's policy before obligating Aetna to pay underinsured motorist benefits, the judge noted that he would have to determine whether Aetna's consent to Bocuzzo's release was also consent to Daly's release. This was error. Whether an underinsured motorist insurer consents to its insured's release of someone legally responsible for his injuries is irrelevant in determining at what amount of damages the insured becomes entitled to underinsured motorist benefits. Under Part 3 of Gleed's policy, Aetna agreed to provide underinsured motorist coverage "to the extent that said damages exceed said limits of liability." G. L. c. 175, § 113L. As we stated in *MacInnis, supra* at 227 n.13, quoting *Schmidt* v. *Clothier*, 338 N.W.2d 256, 261 (Minn. 1983), "The [under]insurer is required to pay only for damages in excess of the tortfeasor's total liability coverage, and not for 'damages [which go] uncompensated because the insured has chosen to settle with the tortfeasor for less than the liability limits.'" Therefore, we conclude that, regardless of whether an insured has released from liability someone legally responsible for his injuries, an insurer is not obligated to pay its insured underinsured motorist benefits until the amount of the insured's damages exceeds the automobile insurance policy limits of those legally responsible for the insured's injuries. Thus, even though Gleed released Daly from liability, Gleed's damages would still have to exhaust Daly's policy limit in addition to Bocuzzo's policy limit before Gleed would become entitled to underinsured motorist benefits. Accordingly, even if Daly was legally responsible, Aetna is not liable to Gleed for any of $77,000 in damages.

Because of the foregoing, we vacate the judge's allowance of Gleed's motion for summary judgment and the denial of Aetna's motion for summary judgment. This case is to be remanded to the Superior Court for a declaration that Aetna is not liable to Gleed for underinsured motorist benefits.

*So ordered.*