LEE MURPHY[1] *vs.* SAFETY INSURANCE COMPANY; LEE MURPHY
& another,[2] third-party defendants.

Worcester. April 9, 1999. - May 4, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, FRIED, MARSHALL, & IRELAND, JJ.

*Insurance,* Motor vehicle insurance, Underinsured motorist, Liability insurance, Coverage, Construction of policy.

The limits of a personal excess liability policy providing supplemental motor vehicle liability coverage are properly includable, with the limits of the applicable automobile insurance policy, to determine whether the policyholder's automobile is underinsured for purposes of an injured person's entitlement to underinsured benefits available to him as a household member under another policy of automobile insurance. [520-522]

CIVIL ACTION commenced in the Superior Court Department on May 22, 1996.

The case was heard by *Francis R. Fecteau,* J., on motions for summary judgment, and a motion to alter or amend judgment was heard by him.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Carol A. Griffin* (*Karyn T. Hicks* with her) for Safety Insurance Company.

*Edward W. McIntyre* (*James T. McLaughlin* with him) for the plaintiff.

GREANEY, J. We transferred this case to this court on our own motion to decide whether Safety Insurance Company (Safety) is obligated to pay underinsurance benefits under its automobile liability policy that covered the plaintiff's minor son, James Murphy, who was seriously injured in a motor vehicle accident. The dispositive issue is whether the tortfeasor's excess liability policy limits should be counted in determining whether the tortfeasor's vehicle was underinsured. A judge in the Superior

_____

[1]On behalf of his minor son, James Murphy.

[2]Suzanne Murphy, parents of James Murphy.

Court, on cross motions for summary judgment, ruled that the limits of the tortfeasor's excess liability policy should not be considered. We conclude that the limits of the excess liability policy should be counted, and, as a result, Safety is not obligated under the express terms of its policy to pay underinsurance benefits. Accordingly, we vacate the second corrected judgment and order the entry of a new judgment declaring the parties' rights in keeping with our conclusion.

The background of the case is as follows. On or about June 20, 1992, James Murphy was seriously injured while a passenger in an automobile owned and operated by his mother, Suzanne Murphy. The accident resulted from the negligent operation of a motor vehicle owned and operated by John Bisol.

The vehicle Bisol was operating was insured under a Massachusetts personal automobile insurance policy which provided optional bodily injury liability coverage limits of $100,000 per person and $300,000 per accident. Bisol was also insured under a personal excess liability policy which provided limits of $1 million in coverage. The $100,000 limit of coverage under Bisol's automobile policy was paid on behalf of Bisol for damages related to the injuries sustained by James in the accident. The parties agreed that the $100,000 policy limits of Bisol's automobile policy were not sufficient to pay James's total damages. The coverage limit of $1 million under Bisol's personal excess liability policy was also paid on his behalf to reimburse James's damages.

Safety had issued a Massachusetts personal automobile insurance policy to Suzanne M. Murphy, James's mother, which was in effect at the time of the accident. Safety's policy provides underinsured motorist coverage limits of $250,000 per person, and $500,000 per accident. The Safety policy obligates it to pay damages to, or for, any household member injured while occupying the insured vehicle. James was a passenger in the insured vehicle at the time of the accident and qualified as a covered household member under Safety's policy.

The Safety policy reads, in pertinent part, as follows:

> "Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part, we will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance.

"We will only pay if the injured person is legally entitled to recover from the owner or operator of the underinsured auto. An auto is underinsured when the limits for automobile bodily injury liability insurance covering the owner and operator of the auto are:

"1. Less than the limits shown for this Part on your Coverage Selections Page; and

"2. Not sufficient to pay for the damages sustained by the injured person."

The Safety policy also provides that Safety "will pay any unpaid damages up to the difference between the total amount collected from the automobile bodily injury liability insurance covering the owner and operator of the responsible auto and the 'per person' limit shown for this Part on your Coverage Selections Page."

The parties could not agree on whether the limits of Bisol's personal excess liability policy should be included in deciding James's entitlement to underinsurance benefits under Safety's policy. The plaintiff brought this action on James's behalf in the Superior Court seeking declarations, pursuant to G. L. c. 231A, that the limits of Bisol's personal excess liability policy should not be included in determining Safety's obligations and that James was entitled to underinsurance benefits under Safety's policy. Safety filed an answer and brought a third-party complaint against James's parents seeking a declaration that Bisol was not underinsured because the limits of his automobile liability insurance policy and his personal excess liability policy, when added together, exceeded the limits of liability of underinsured benefits in Safety's policy.[3] On cross motions for summary judgment, the judge concluded that the plaintiff's position was correct; that Bisol's vehicle was underinsured; and that James was entitled to a payment under Safety's policy of $150,000 with interest.[4] The judge subsequently vacated the judgment which incorporated these rulings, and he ordered the entry of a corrected judgment which made the principal declara-

---

[3]James's parents, in lieu of filing an answer to Safety's third-party complaint, signed a stipulation agreeing to be bound by a decision on the plaintiff's complaint.

[4]The judge arrived at this amount by subtracting the $100,000 paid to James by Bisol's automobile liability insurer from the $250,000 per person limit of underinsurance benefits provided for by the Safety policy.

tion as to the effect of Bisol's personal excess liability policy, but left unspecified the amount of underinsurance benefits to be paid by Safety. Both Safety and the plaintiff appealed from the corrected judgment.[5]

1. Safety's policy is governed by the provisions of G. L. c. 175, § 113L (2), which states that underinsurance benefits are to be paid only when the "bodily injury liability bond amount or policy limit [of the tortfeasor] is less than the policy limit for underinsured motor vehicle coverage." With respect to this statutory provision, and a similar Safety policy, we said the following in *Alguila* v. *Safety Ins. Co.*, 416 Mass. 494, 496-497 (1993):

"The Safety policy is not ambiguous. It expressly distinguishes between the tortfeasor's policy 'limits' and 'the total amount collected' from the tortfeasor's insurer. It clearly states that a tortfeasor's automobile is underinsured when (1) the liability limits of the policy covering that automobile are less than the underinsurance limits stated in Safety's policy, and (2) the tortfeasor's liability limits are insufficient to pay for the claimant's bodily injury damages. The policy explicitly provides that a determination whether a tortfeasor's automobile is underinsured requires a comparison of the claimant's and tortfeasor's limits, not of the claimant's limits and the claimant's actual recovery from the tortfeasor's insurer. The policy further states that Safety will pay a claimant the difference between the amount the claimant collects from the tortfeasor's insurer and the underinsurance limits of Safety's policy only '[w]hen an auto is underinsured,' that is, when the tortfeasor's liability limits are less than the underinsurance limits, *and* the tortfeasor's liability limits are insufficient to pay for the claimant's bodily injury damages. Thus, the question of the amount actually received from the tortfeasor becomes relevant only after a determination is made that a tortfeasor's automobile is underinsured. Nothing in Safety's policy suggests that Safety will pay even when the tortfeasor's automobile is not underinsured within the policy's definition of that word, or that the question whether the tortfeasor's automobile is underin-

---

[5]In view of our conclusion that Safety is not obligated to pay any underinsurance benefits, we need not decide the plaintiff's cross appeal.

sured is influenced in any way by the amount of money the claimant may actually realize from the tortfeasor's insurer." (Emphasis original).

The issue is whether the limits of the personal excess liability policy of Bisol should be included in considering whether the underinsurance benefits of Safety's policy apply. It is undisputed that the excess personal liability policy provided coverage for motor vehicle liability incurred by Bisol. It is of no significance that the excess personal liability policy furnished primary coverage in other areas and supplemental coverage in the motor vehicle liability area. Bisol purchased the personal excess liability policy to obtain comprehensive protection, and that protection became applicable to satisfy Bisol's liability for the damages caused to James by the accident. That being the case, Safety's policy, and G. L. c. 175, § 113L (2), clearly provide that underinsurance benefits are not due when the combined total of Bisol's motor vehicle liability limits exceed the limits of Safety's underinsurance coverage. See *Pennsylvania Gen. Ins. Co.* v. *Morris*, 599 A.2d 1042, 1043-1044 (R.I. 1991) (insured not entitled to underinsurance benefits when tortfeasor's liability coverage, including an excess policy, exceeded insured's coverage limits for underinsurance); *Metropolitan Prop. & Liab. Ins. Co.* v. *Clinton*, 553 So. 2d 1287, 1288 (Fla. Dist. Ct. App. 1989) (insured not entitled to underinsurance benefits when tortfeasor carried two bodily injury liability policies which together exceeded insured's coverage limits for underinsurance). Cf. *Hanover Ins. Co.* v. *Pascar*, 421 Mass. 442, 445-446 (1995) (when two tortfeasors responsible for injuries of insured, insured's underinsurance benefits not triggered if less than combined limits of both tortfeasors); *Gleed* v. *Aetna Cas. & Sur. Co.*, 418 Mass. 503, 507 (1994) (when tortfeasor operates vehicle of another, insured's underinsured benefits not triggered if less than the combined limits of both tortfeasor and vehicle owner's automobile liability insurance).

In reaching this conclusion, we reject the plaintiff's argument that a personal excess liability policy cannot be construed as a bodily injury liability policy under G. L. c. 175, § 113L (2), or

under the Safety policy.[6] The purpose of the statute,[7] and Safety's uninsured and underinsured motorist provisions, is to furnish a means by which injured parties who have less than adequate insurance available to them are made as nearly whole as possible, by taking into account the tortfeasor's bodily injury liability policy limits. See *Alguila* v. *Safety Ins. Co.*, *supra* at 498. That personal excess insurance liability policies are not construed as carrying with them all the obligations of automobile bodily injury liability policies, see *Liberty Mut. Ins. Co.* v. *McLaughlin*, 412 Mass. 492, 493-494. (1992), does not mean that the benefits provided by excess insurance liability policies should not be considered in determining whether an injured party is entitled to underinsured motorist benefits under the automobile liability policy covering the injured party.

2. The second corrected judgment is vacated. A new judgment is to enter declaring that Safety is not liable to the plaintiff for underinsurance benefits.

*So ordered.*

---

[6]The Safety policy, which contains the language in the standard motor vehicle liability insurance policy established by the Commissioner of Insurance, see *Hanover Ins. Co.* v. *Pascar*, 421 Mass. 442, 444 n.5 (1995), should be construed in conformity with G. L. c. 175, c. 113L (2), because its content is substantially dictated by statute. *Amica Mut. Ins. Co.* v. *Bagley*, 28 Mass. App. Ct. 85, 90 (1989), and cases cited.

[7]Amendments to G. L. c. 175, § 113L (2), by St. 1988, c. 273, § 46, which made underinsured coverage optional, changed the trigger for coverage, and prohibited the practice of stacking uninsured and underinsured coverages in different policies, were made as a part of a legislative effort "to lower the cost of automobile insurance premiums." *Alguila* v. *Safety Ins. Co.*, 416 Mass. 494, 499 (1993), quoting *Massachusetts Auto Body Ass'n* v. *Commissioner of Ins.*, 409 Mass. 770, 772 (1991). See St. 1988, c. 273, § 1.