Hanover Insurance Company *vs.* Christine Fasching.

No. 99-P-10.

Plymouth. December 14, 2000. - September 17, 2001.

Present: Brown, Gillerman, & Duffly, JJ.

*Insurance,* Motor vehicle insurance, Construction of policy. *Practice, Civil,* Declaratory proceeding. *Contract,* Insurance.

This court concluded that an insured was not entitled to coverage under Part 1 of a standard Massachusetts automobile insurance policy providing compulsory insurance for bodily injury to others, where the injuries were caused by the insured's operation of a vehicle owned by a third party, and where that vehicle was not specifically listed on the policy. [521-524]

Civil action commenced in the Superior Court Department on September 8, 1997.

The case was heard by *Suzanne V. DelVecchio,* J., on motions for summary judgment.

*John H. Bruno, II,* for the plaintiff.

*Michael R. Rezendes* for the defendant.

Brown, J. This appeal concerns the interpretation of a standard Massachusetts automobile insurance policy. At issue is whether, under a policy providing an insured with compulsory insurance for bodily injury to others, the insurer is required to pay for such injuries caused by its insured's operation of a vehicle owned by a third party and not specifically listed on the policy.

In 1993, David Ruggiano owned a 1983 GMC pick-up truck that was listed on the standard Massachusetts Automobile Insurance Policy (Sixth Edition) he had purchased from Hanover Insurance Company (Hanover). Ruggiano's insurance policy provided coverage for "Compulsory Bodily Injury to Others" (Part 1), but no coverage for "Optional Bodily Injury to Others" (Part 5).

On March 24, 1993, while driving on a public way in Hing-

ham, Christine Fasching was injured in a collision with an automobile operated by David Ruggiano. At the time, Ruggiano was driving, with permission, a 1989 Toyota owned by his friend, Thea Richardson. Richardson maintained a standard Massachusetts automobile policy on the Toyota, also issued by Hanover. Ruggiano's own vehicle, the GMC truck, was being used that day by his father, with Ruggiano's consent.

Fasching made a demand of Hanover for payment under both Richardson's policy insuring the 1989 Toyota operated by Ruggiano at the time of the accident, and Ruggiano's policy insuring his 1983 GMC pick-up truck.[1] Hanover paid Fasching the limit of the policy on the Richardson vehicle, which was $20,000,[2] but denied coverage pursuant to Ruggiano's policy on the basis that Ruggiano's truck had neither caused, nor was otherwise implicated in, the accident. Hanover then commenced this action in the Superior Court seeking a declaration, pursuant to G. L. c. 231A, that it was not obligated to pay insurance benefits to Fasching under the terms of its policy with Ruggiano.

A Superior Court judge considered the case on cross motions for summary judgment. See Mass.R.Civ.P. 56(a), (b), 365 Mass. 824 (1974). The judge denied Hanover's motion, and allowed Fasching's motion. The judge did not express in writing her reasons for decision and did not declare the rights and responsibilities of the parties vis-à-vis the Ruggiano policy. On appeal from the ensuing judgment, Hanover asserts that Ruggiano's policy, insofar as it is limited to compulsory insurance, only covers damages caused by an automobile described on the policy's coverage selection page (or a temporary substitute or permanent replacement, see *infra*). Since the accident did not involve such an automobile, Hanover says it has no obligation under Ruggiano's policy to pay Fasching's claim. We agree.

"A declaratory judgment in an action provides an appropriate means of deciding a dispute concerning the meaning of language in an insurance policy." *Lumbermens Mut. Cas. Co.* v. *Belleville Indus., Inc.*, 407 Mass. 675, 685 (1990). "The responsibility of

---

[1]The parties submitted the issues of liability and damages to an arbitrator, who found in Fasching's favor and awarded her the sum of $54,200.22.

[2]The Richardson insurance policy had "Optional Bodily Injury to Others" coverage with limits of $20,000 per person and $40,000 per accident.

construing the language of an insurance contract is a question of law for the trial judge, and then for the reviewing court." *Cody* v. *Connecticut Gen. Life Ins. Co.*, 387 Mass. 142, 146 (1982). See *Ruggerio Ambulance Serv., Inc.* v. *National Grange Mut. Ins. Co.*, 430 Mass. 794, 797 (2000); *Vergato* v. *Commercial Union Ins. Co.*, 50 Mass. App. Ct. 824, 826 (2001).

Part 1 of Ruggiano's policy provides in pertinent part that "[u]nder this Part, we [Hanover] will pay damages to people injured or killed by your auto in Massachusetts accidents. . . . We will pay only if you or someone else using your auto with your consent is legally responsible for the accident."[3] The term "your auto" is defined in the policy as (a) the vehicle(s) described on the policy's coverage selection page; (b) "[a]ny auto while used as a temporary substitute for the described auto while that auto is out of normal use because of breakdown, repair, servicing, loss or destruction"[4]; or (c) a vehicle permanently replacing the described automobile. Here, the automobile described on the coverage selection page of Ruggiano's policy is a 1983 GMC S15 pick-up truck.

It is undisputed that Ruggiano's GMC pick-up truck was not involved in the accident. Ruggiano had in fact lent the GMC pick-up truck to his father before the accident on March 24, and it was not temporarily "out of normal use" within the meaning of the policy. It follows from this that Ruggiano was not operating the Richardson vehicle as a qualifying "temporary substitute" vehicle or as a permanent replacement for his GMC truck. Accordingly, the Richardson vehicle cannot fit within the term "your auto" under Ruggiano's policy.[5]

Fasching does not dispute that the vehicle Ruggiano was

---

[3]"As to the statutory coverage, the insurance policy includes within the definition of the term 'insured' 'any other person responsible for the operation of the insured motor vehicle with the express or implied consent of the named insured.' " *Liberty Mut. Ins. Co.* v. *Merchants Car Leasing Corp.*, 27 Mass. App. Ct. 1146, 1147 (1989). "That language has been construed to mean that the liability of the insurer runs with the car to which the policy refers, so long as the owner has sanctioned the presence of the car on the public ways." *Ibid.*

[4]A proviso being that the temporary substitute vehicle must not be owned by the named insured or his or her spouse.

[5]Ruggiano submitted an unrebutted affidavit that Richardson's vehicle was not a temporary substitute vehicle or permanent replacement for his truck.

driving at the time of the accident does not qualify as "your auto" under his policy. Instead, Fasching relies on the following provision, also found in Part 1 of Ruggiano's insurance policy:

> "If someone covered under this Part is using an auto he or she does not own at the time of the accident, the owner's auto insurance must pay its limits before we pay. Then, we will pay, up to the limits shown on your Coverage Selections Page, for any damages not covered by that insurance."

Because the policy limits on the Richardson vehicle (operated by Ruggiano) have been paid, Fasching says that Hanover is obligated to pay her the $20,000 limit under the compulsory coverage of the Ruggiano policy. She argues that the "plain language" of the provision mandates that the insurer "will pay" its limits after payment of the owner's (here, Richardson's) auto insurance, and that any ambiguities should be resolved against the insurer. We do not agree.

While not mandated by statute, the provision of Part 1 in question is included in the standard form automobile insurance policy approved by the Commissioner of Insurance. Because the provision is "controlled by the Division of Insurance rather than the individual insurer, the rule of construction resolving ambiguities in a policy against the insurer is inapplicable." *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. 537, 541 (1984). See *Murphy* v. *Safety Ins. Co.*, 429 Mass. 517, 522 n.6 (1999). "Instead, we must ascertain 'the fair meaning of the language used, as applied to the subject matter.' " *Bilodeau* v. *Lumbermens Mut. Cas. Co.*, 392 Mass. at 541, quoting from *Save-Mor Supermarkets, Inc.* v. *Skelly Detective Serv., Inc.*, 359 Mass. 221, 226 (1971). See *Gomes* v. *Metropolitan Prop. & Cas. Ins. Co.*, 45 Mass. App. Ct. 27, 31 (1998); *Vergato* v. *Commercial Union Ins. Co.*, 50 Mass. App. Ct. at 826-827. "This is true whether the language of a standard Massachusetts automobile insurance policy is considered ambiguous . . . or explicit."

*Manning* v. *Fireman's Fund Am. Ins. Cos.*, 397 Mass. 38, 40 (1986).[6]

The portion of Part 1 relied on by Fasching, quoted above, must be read in context with the other provisions of Part 1 and the policy as a whole. The provision contemplates the situation where the named insured is operating a temporary (or permanent) substitute vehicle due to the breakdown, repair or loss of the insured vehicle. Provision is made for the coverage of the disabled insured vehicle to extend to a temporary substitute, or permanent replacement, vehicle operated by the insured.[7] See 6B Appleman & Appleman, Insurance Law & Practice § 4293. 5 (Supp. 2001), where the authors state the following: "To equitably implement the goal of ensuring that an insured has continuous access to an insured vehicle, while preventing an increase in the risk borne by the insurer, the temporary substitute vehicle provision extends coverage to only one operating vehicle at a time."

In that limited circumstance of a temporary substitute vehicle, the quoted provision of Part 1 simply determines that the policy for the insured serves, in a sense, as secondary insurance, up to the limits of the policy, if unpaid damages remain after insurance on the temporary substitute vehicle has been paid to its limits.

Because neither a temporary substitute nor a permanent replacement vehicle was involved in the accident, the quoted provision upon which Fasching relies is inapplicable. No other language in Part 1 points to a different result, nor do we believe an insured would reasonably understand the policy's language to suggest otherwise.[8]

Fasching relies heavily on *Gleed* v. *Aetna Cas. & Surety Co.*,

---

[6] "Controversy between the parties does not itself create ambiguity." *Mitcheson* v. *Izdepski*, 32 Mass. App. Ct. 903, 905 (1992). See *Wyner* v. *North Am. Specialty Ins. Co.*, 78 F.3d 752, 756 (1st Cir. 1996).

[7] "The purpose of the temporary substitute clause is to afford continuous coverage to the insured while limiting the risk of the insurer to one operating vehicle at a time for a single premium, giving the insured additional temporary coverage when the insured cannot use the vehicle scheduled under the policy" (footnote omitted). 8 Couch, Insurance § 117:62 (3d ed. 1997).

[8] For example, if Ruggiano's father, while operating the GMC truck, had caused an accident that same day (March 24), Hanover would have been

418 Mass. 503, 509 (1994), to support her contention. *Gleed* involved Part 5 "Optional Bodily Injury" insurance coverage. (Optional insurance "expands the scope of the compulsory coverage to persons who would otherwise be excluded because of their status or the locus of the accident." *Hanover Ins. Co.* v. *Mota,* 34 Mass. App. Ct. 928, 929 [1993].) The *Gleed* court considered, along with other Part 5 language, a provision worded identically to that emphasized by Fasching in Part 1 (quoted *supra*). Reading Part 5 as a whole, the court concluded that Part 5 provided coverage where, at the time of the accident, the insured was operating with permission a vehicle not listed on the policy. 418 Mass. at 509.

*Gleed* is not applicable to the instant circumstances, however. That case merely states that Part 5 coverage is not precluded by the specific language in question if the insured is operating a vehicle not listed on the policy. This does not mean that the vehicle need not qualify as "your auto" in order for Part 1 coverage to exist. Instead, Part 1 "contemplates a situation where, although the operator is covered under the policy *and the vehicle in question meets the definition of 'your auto,'* the policyholder does not hold title to the vehicle" (emphasis supplied). *Vergato* v. *Commercial Union Ins. Co.,* 50 Mass. App. Ct. at 829. Viewing the policy as a whole, including the specific Part 1 language limiting coverage to instances where the covered driver is operating a vehicle that qualifies as "your auto,"[9] we hold that the Part 1 language relied on by Fasching merely establishes an order of payment when a situation such as that described in *Vergato* arises, and does not provide coverage when the insured is driving a vehicle that does not qualify as "your auto."

Accordingly, Hanover is entitled to judgment as matter of

---

obligated under Ruggiano's policy to pay only for that accident, and not the other as well.

[9]We reiterate that language here: "we will pay damages to people injured or killed by your auto in Massachusetts accidents. . . . We will pay only if you or someone else using your auto with your consent is legally responsible for the accident." This language stands in sharp contrast to the broader Part 5 language emphasized in *Gleed*: "Under this part, we will pay damages to people injured . . . in accidents *if* you or *a household member is legally responsible for the accident*" (emphasis original). 418 Mass. at 509.

law. The judgment entered below is vacated. A new judgment shall be entered in favor of the plaintiff, Hanover Insurance Company, declaring that Hanover has no obligation, under the terms of its policy with its insured, David Ruggiano, to pay insurance benefits to the defendant, Christine Fasching, for her accident on March 24, 1993.

*So ordered.*