150 P.3d 845

**Leighton K. HOLI, Plaintiff–Appellant/Cross–Appellee,**

v.

**AIG HAWAII INSURANCE COMPANY, INC., Defendant–Appellee/Cross–Appellant,**

and

**John Does 1–10, Jane Does 1–10, Doe Partnerships 1–10, Doe Corporations 1–10, Roe "Non–Profit" Corporations 1–10, and Roe Governmental Entities 1–10, Defendants–Appellees/Cross–Appellees.**

No. 26059.

Intermediate Court of Appeals of Hawai'i.

Jan. 8, 2007.

Certiorari Rejected June 5, 2007.

Arthur Y. Park, Laurent J. Remillard, Jr., and John C. McLaren (Park Park Yu & Remillard) and Earl T. Nakasato, on the briefs, Honolulu, for plaintiff-appellant/cross-appellee.

Lisa M. Ginoza and Becky T. Chestnut (McCorriston Miller Mukai MacKinnon), on the briefs, Honolulu, for defendant-appellee/cross-appellant.

WATANABE, PRESIDING J., LIM, and FUJISE, JJ.

Opinion of the Court by WATANABE, Presiding J.

This appeal and cross-appeal stem from a dispute between Plaintiff–Appellant/Cross–Appellee Leighton K. Holi (Holi) and Defendant–Appellee/Cross–Appellant AIG Hawaii Insurance Company, Inc. (AIG) regarding whether Holi, who was seriously injured in an automobile accident on February 10, 2002, is entitled to underinsured motorist (UIM) benefits under an automobile insurance policy (the Policy) issued by AIG to named insureds Rudy and Myrtle L. Castilan (the

1. The Honorable Terence T. Yoshioka (Judge Yoshioka) presided.

2. Plaintiff–Appellant/Cross–Appellee Leighton K. Holi had an automobile insurance policy with

Castilans), in whose home Holi was residing at the time of the accident.

The Castilans are the parents of Holi's girlfriend, Melody M. Castilan (Melody). Melody and Holi are the biological parents of a minor son (Son). Although Holi had been living continuously in the Castilans' home since March 1998, he was not married to Melody at the time of the accident.

The Circuit Court of the Third Circuit (the circuit court)[1] held that under the terms of the Policy, Holi was not an "insured" entitled to UIM benefits because he was "not related by 'blood, marriage or adoption' to the Castillians [sic] (i.e., the policy holder)." The circuit court also held that the Policy was not in conflict with Hawaii Revised Statutes (HRS) § 431:10C–103 (2005 Repl.) and therefore, was not voidable as being contrary to public policy. Finally, the circuit court denied AIG's request for attorneys' fees and costs expended to defend Holi's lawsuit. This appeal by Holi and cross-appeal by AIG followed. We affirm.

## BACKGROUND

### A. *Factual Background*

On February 10, 2002, while Holi was driving his 2001 Dodge Dakota to work, his vehicle was struck head on by a vehicle driven by Ador N. Laguisma (Laguisma). Holi suffered serious injuries and Laguisma died as a result of the collision. After settling with the Estate of Laguisma, Lila G. Laguisma, and First Fire and Casualty Insurance of Hawaii, Ltd. for the $20,000 bodily injury limits of Laguisma's automobile insurance policy, Holi[2] sought UIM coverage under the Policy as a "family member" of the Castilans.

The Policy provided UIM coverage with limits of $20,000 per person and $40,000 per accident, but limited UIM coverage only to an "insured." Under the Policy, AIG agreed to

Defendant–Appellee/Cross–Appellant AIG Hawaii Insurance Company, Inc. (AIG) that covered his vehicle. The policy did not include underinsured motorist coverage.

pay compensatory damages which an *insured* is legally entitled to recover from the owner or operator of an *underinsured motor vehicle* because of *bodily injury:* 1. Sustained by an *insured;* and 2. Caused by an accident.

The Policy defined "insured" as follows:

> 1. You or any *family member.* 2. Any other person *occupying your covered auto.* 3. Any person for compensatory damages that person is entitled to recover because of *bodily injury* to which this coverage applies sustained by a person described in 1. or 2. above.

Additionally, the Policy defined "family member" as

> a person related to you by blood, marriage or adoption who is a resident of your household, or such person while temporarily residing elsewhere. This includes a ward or foster child, and also includes a reciprocal beneficiary as defined in Act 383, [Hawaii Session Laws (Haw.Sess.L.)] 1997.

---

**3.** Hawaii Revised Statutes (HRS) § 607–14 (Supp.2005) provides now, as it did when Defendant–Appellee/Cross–Appellant AIG Hawaii Insurance Company, Inc. (AIG) filed its request for attorneys' fees and costs, in relevant part, as follows:

> **Attorneys' fees in actions in the nature of assumpsit, etc.** In all the courts, in all actions in the nature of assumpsit and in all actions on a promissory note or other contract in writing that provides for an attorneys' fee, there shall be taxed as attorneys' fees, to be paid by the losing party and to be included in the sum for which execution may issue, a fee that the court determines to be reasonable; provided that the attorney representing the prevailing party shall submit to the court an affidavit stating the amount of time the attorney spent on the action and the amount of time the attorney is likely to spend to obtain a final written judgment, or, if the fee is not based on an hourly rate, the amount of the agreed upon fee. The court shall then tax attorneys' fees, which the *court determines to be reasonable, to be paid* by the losing party; provided that this amount shall not exceed twenty-five per cent of the judgment.

**4.** HRS § 607–14.5 (Supp.2005) provides now, as it did when AIG filed its request for attorneys' fees and costs, as follows:

AIG denied Holi's claim for UIM benefits on grounds that he was not an "insured" under the terms of the Policy.

### B. *Procedural History*

On November 8, 2002, Holi filed a complaint in the circuit court, seeking a declaratory judgment that AIG was obligated to provide UIM coverage for his injuries because he was related to the Castilans by blood through the birth of Son and was therefore, a family member of the Castilans. The complaint also requested general, special, punitive, and other damages for breach of contract and/or contractual warranties; violation of the Hawaii Insurance Code, HRS chapter 431; breach of the covenant of good faith and fair dealing owed to Holi under the Policy; negligent and/or intentional infliction of emotional distress upon Holi; and willful, wanton, and/or reckless acts and/or omissions by AIG.

On May 2, 2003, AIG filed a motion to dismiss Holi's complaint pursuant to Hawai'i Rules of Civil Procedure Rules 7, 12(b)(6), and 12(c). AIG also requested attorneys' fees and costs pursuant to HRS §§ 607–14 (Supp.2005),[3] 607–14.5 (Supp.2005),[4] and

> **Attorneys' fees and costs in civil actions.** (a) In any civil action in this State where a party seeks money damages or injunctive relief, or both, against another party, and the case is subsequently decided, the court may, as it deems just, assess against either party, whether or not the party was a prevailing party, and enter as part of its order, for which execution may issue, a reasonable sum for attorneys' fees and costs, in an amount to be determined by the court upon a specific finding that all or a portion of the party's claim or defense was frivolous as provided in subsection (b).
>
> (b) In determining the award of attorneys' fees and costs and the amounts to be awarded, the court must find in writing that all or a portion of the claims or defenses made by the party are frivolous and are not reasonably supported by the facts and the law in the civil action. In determining whether claims or defenses are frivolous, the court may consider whether the party alleging that the claims or defenses are frivolous had submitted to the party asserting the claims or defenses a request for their withdrawal as provided in subsection (c). If the court determines that only a portion of the claims or defenses made by the party are frivolous, the court shall determine a reasonable sum for attorneys' fees and costs in relation to the frivolous claims or defenses.
>
> (c) A party alleging that claims or defenses are frivolous may submit to the party asserting

431:10C–211 (2005 Repl.).[5]

In its motion to dismiss and memorandum in support of the motion, AIG argued, as to Holi's request for a declaratory judgment, that based on well-established definitions and case law, Holi's claim that he was related to the Castilans by blood "directly contradicts the historic, far-reaching and firmly rooted understanding that a relationship by blood, or consanguinity, arises from sharing of blood from a common *ancestor.*" AIG also argued that the Hawai'i cases cited by Holi were inapposite to the legal arguments he asserted in his complaint.

As to Holi's claims for damages for breach of contract and/or contractual warranties, AIG argued that because Holi was not an "insured" under the terms of the Policy with the Castilans, there could be no liability for these claims. As to Holi's claim for damages for AIG's alleged violation of HRS chapter 431, AIG pointed out that it is well-established under Hawai'i case law that no private cause of action is created by HRS chapter 431.

AIG also argued that Holi failed to state a cause of action for breach of the covenant of good faith and fair dealing, failed to state a claim for negligent and/or intentional infliction of emotional distress, and failed to allege facts that justified an award of punitive damages.

With respect to its request for attorneys' fees and costs, AIG argued that Holi's claim to be "related by blood" to the Castilans was "manifestly and palpably without merit" and therefore, AIG was entitled to attorneys' fees and costs pursuant to Hawai'i case law and HRS §§ 607–14.5 and 431:10C–211. In the alternative, AIG maintained that because this case was "in the nature of assumpsit," a fact implicitly acknowledged by Holi in his claim for breach of contract, AIG was statutorily entitled to attorneys' fees and costs pursuant to HRS § 607–14.

On June 17, 2003, Holi filed a memorandum in opposition to AIG's motion to dismiss. In his memorandum, Holi did not argue that he was "related by blood" to the named insureds. Instead, he argued that the definition of "insured" in the Policy was more restrictive and thus, in conflict with the definition of "insured" in HRS § 431:10C–103 (2005 Repl.), as amended by Act 275, 1998 Haw. Sess. L. 922, 923, which states:

> "Insured" means:
>
> (1) The person identified by name as insured in a motor vehicle insurance policy complying with section 431:10C–301; and
>
> (2) *A person residing in the same household with a named insured,* specifically:
>
> (A) A spouse or reciprocal beneficiary or other relative of a named insured; and
>
> (B) A minor in the custody of a named insured or of a relative residing in the same household with a named insured.
>
> *A person resides in the same household if the person usually makes the person's home in the same family unit,* which may include reciprocal beneficiaries, even though the person temporarily lives elsewhere.

(Emphases added.) Holi argued that when the Hawai'i State Legislature (the legislature) amended the definition of "insured" in

---

the claims or defenses a request for withdrawal of the frivolous claims or defenses, in writing, identifying those claims or defenses and the reasons they are believed to be frivolous. If the party withdraws the frivolous claims or defenses within a reasonable length of time, the court shall not award attorneys' fees and costs based on those claims or defenses under this section.

5. HRS § 431:10C–211(d) (2005 Repl.) provides now, as it did when AIG filed its request for attorneys' fees and costs, as follows:

Attorney's fees. . . .

. . . .

(d) An insurer or self-insurer may be allowed an award of a reasonable sum as attorney's fees based upon actual time expended, and all reasonable costs of suit for its defense against a person making claim against the insurer or self-insurer, within the discretion of the court upon judicial proceeding or the commissioner upon administrative proceeding where the claim is determined to be fraudulent or frivolous. Such attorney's fees and all reasonable costs of suit so awarded may be treated as an offset against any benefits due or to become due to the person.

1998, it clearly intended to broaden the definition to include "all persons residing in the same household with a named insured[.]" Holi also argued that the word "specifically" that precedes subparts (2)(A) and (2)(B) of the definition should not be viewed as a term of limitation or exclusion, but as setting forth examples of persons residing in the same household with a named insured who qualified as an "insured" under the statutory definition. Finally, Holi urged the circuit court to conclude that the Policy's definition of "family member" was in conflict with HRS § 431:10C–103 and therefore, void.

On June 25, 2003, the circuit court held a hearing on AIG's motion to dismiss.[6] On August 4, 2003, the circuit court filed its order granting AIG's motion to dismiss in its entirety, but denying AIG's request for attorneys' fees and costs (the Order).

The Order concluded, in relevant part, as follows:

[T]he Court concludes that the scope of coverage for [UIM] benefits under [the Policy] does *not* extend to [Holi], as [Holi] is not related by "blood, marriage or adoption" to the Castillians [ (sic)] (i.e. the policy holder). The Court concurs with [AIG's] interpretation that relationship by blood means relationship by descent from a common ancestor and that this is a commonly accepted definition. As [Holi] was not a descendant of an ancestor common with the Castillians [ (sic)], nor adopted by them, nor married to a daughter or other relative of them, [Holi] cannot qualify as an "insured" on the sole basis that he resided in the same household with the Castillians [ (sic)].

The Court also finds that the provisions of [the Policy] are not in conflict with [HRS] § 431:10C–103 and, therefore, are not voidable as being contrary to public policy. In arriving at this conclusion, the Court gave effect to the plain and ambiguous meaning of the statute which "specifically" required that the "person residing in the same household with a named insured" be either "a spouse or reciprocal beneficiary or other relative of the named insured."

The term "specifically" is an adverb meaning that it is a "member of a class of words functioning as modifiers of verbs, adjectives, other adverbs, or clauses .. typically addressing some relation of place, time, manner, degree, means, cause, result, exception, (etc.)." Random House Webster's College Dictionary. It is a form of the word "specific" which is an adjective having the following meaning:

1. Having a special application, bearing or reference, explicit or definite.

2. Specified, precise, or particular.

3. Peculiar or proper to somebody or something, as characteristics or effect.

4. Of a special or particular kind.

5. Of or pertaining to a species .. (ibid.)

Applying the foregoing definitions, it is the Court's conclusion that the term "specifically" as used in [HRS] § 431:10C–103 was intended to have "a special application, bearing or reference" and to be "peculiar or proper" to the class of persons identified as "persons residing in the same household with a named insured."

Contrary to [Holi's] authorities, the Court construes "specifically," as used in this context, to be a word of limitation intended to restrict the identification of those "persons residing in the same household with a named insured" to "a spouse or reciprocal beneficiary or other relative of a named insured." There is no need to consider the other arguments advanced by [Holi] to interpret the scope of the UIM coverage as the words of [the Policy] are plain and unambiguous and are not in need of interpretation. Absent such ambiguity, the inclusion of [Holi] as an "insured" under the subject policy must be left to the greater wisdom of our appellate courts or to changes to § 431:10C–103 effected by our Legislature.

In accordance with the foregoing, [AIG's] Motion to Dismiss is granted.

With regard to [AIG's] request for the award of attorneys' fees and costs, the

6. Judge Yoshioka presided.

Court does not find that [Holi's] claim was frivolous and will deny the request.

(Brackets omitted.)

On August 19, 2003, the circuit court entered its final judgment in favor of AIG and against Holi with respect to all claims asserted. This appeal and cross-appeal followed.

## ISSUES ON APPEAL

On appeal, Holi alleges that the circuit court erred in five respects:

(1) The circuit court erred in narrowly construing the statutory definition of "insured" in HRS § 431:10C–103 because the longstanding remedial and social purposes of Article 10C of HRS chapter 431 favor a liberal construction of the statute;

(2) The circuit court "erred in not applying the usual and customary definition of the word 'specifically' which appears in the definition of 'Insured' in HRS § 431[:]10C–103, and instead erroneously construed 'specifically' narrowly as a word of limitation or exclusion and thereby erroneously concluded that [Holi] was not an insured under AIG's UIM policy with the Castilans[;]"

(3) The circuit court "erred in concluding that the definition of 'Family member' in AIG's insurance policy issued to the Castilans is not in conflict with the definition of 'Insured' in HRS § 431[:]10C–103 and is therefore void[;]"

(4) The circuit court "erred in failing to observe the [s]upreme [c]ourt's recognition that family members, living in the same residence, are considered members of the same household for the purposes of insurance coverage[;]" and

(5) The circuit court "erred in dismissing [Holi's] causes of action for breach of contract and/or contractual warranties, a Hawaii Insurance Code violation, breach of covenant of good faith and fair dealing, negligent and/or intentional infliction of emotional distress, and punitive damages."

In its cross-appeal, AIG raises two points of error:

(1) The circuit court erred in denying AIG's request for attorneys' fees and costs under HRS § 607–14 because the statute requires that "in actions in the nature of assumpsit the court *shall* award reasonable attorneys['] fees to the prevailing party[;]" and

(2) The circuit court erred in denying AIG's request for attorneys' fees and costs under HRS §§ 607–14.5 and 431:10C–211, which permit the award of attorneys' fees and costs expended in defense of a frivolous claim.

## DISCUSSION

### A. *The Circuit Court Did Not Err in Concluding that Holi was Not an "Insured" Entitled to UIM Benefits*

The central issue in this appeal is whether Holi qualifies as an "insured" under HRS § 431:10C–103. This is a question of law that we review *de novo* on appeal. *Estate of Doe v. Paul Revere Ins. Group*, 86 Hawai'i 262, 270, 948 P.2d 1103, 1111 (1997).

When construing a statute, courts "are bound to give effect to all parts of a statute, and ... no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all words of the statute." *Keliipuleole v. Wilson*, 85 Hawai'i 217, 221, 941 P.2d 300, 304 (1997). Moreover, analysis of a statute is guided by several well-established principles of statutory construction:

First, the fundamental starting point for statutory interpretation is the language of the statute itself. Second, where the statutory language is plain and unambiguous, our sole duty is to give effect to its plain and obvious meaning. Third, implicit in the task of statutory construction is our foremost obligation to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. Fourth, when there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists. And fifth, in construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambigu-

ous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining the legislative intent. One avenue is the use of legislative history as an interpretive tool. *Peterson v. Hawaii Elec. Light Co.*, 85 Hawai'i 322, 327–28, 944 P.2d 1265, 1270–71 (1997) (brackets, quotation marks, and citations omitted; block formatting revised). "This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it ... to discover its true meaning." *Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152, AFL–CIO*, 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (quotation marks and brackets omitted) (quoting *Guth v. Freeland*, 96 Hawai'i 147, 150, 28 P.3d 982, 985 (2001)).

■ We state at the outset that the definition of "insured" in HRS § 431:10C–103 is *not* plain and unambiguous. On the one hand, it generally defines an "insured" as "[a] person residing in the same household with a named insured," a qualification that Holi clearly meets. On the other hand, the statute "specifically" enumerates two categories of persons who qualify as "[a] person residing in the same household with a named insured":

(A) A spouse or reciprocal beneficiary or other relative of a named insured; and

(B) A minor in the custody of a named insured or of a relative residing in the same household with a named insured.

Holi is clearly not a spouse, reciprocal beneficiary, or minor in the custody of the Castilans. He claims, however, that he is a "relative" of the Castilans. He also maintains that even if he is not legally a "relative" of the Castilans, the fact that he resides in the same household with the Castilans is enough to qualify him as an "insured" under HRS § 431:10C–103.

The circuit court construed the word "specifically" that appears in the definition of "insured" in HRS § 431:10C–103 as a term of limitation or exclusion. Holi contends that this construction was wrong because the term "specifically," when used without restrictive modifying words or phrases such as "only," "exclusively," "limited to," or "re-

stricted to" signifies that the phrase to which the word refers "is simply a description or illustration of a particular, notable example that the author(s) intended to highlight so that its inclusion within the subject matter of the sentence would not be overlooked or mistaken by a reader." Used in this manner, Holi argues that "the word 'specifically' is synonymous with 'especially,' 'including,' 'particularly,' and 'such as.' " In other words, Holi contends that the word "specifically," as used in HRS § 431:10C–103, means particularly, but not limited to, those persons enumerated in subparts (2)(A) and (2)(B) of the definition of "insured."

For the following reasons, we disagree with Holi's assertions.

### 1.

Prior to 1998, HRS § 431:10C–103 defined "insured" as follows:

"Insured" means:

(1) The person identified by name as insured in a motor vehicle insurance policy complying with section 431:10C–301; and

(2) While residing in the same household with a named insured, the following persons not identified by name as an insured in any other contract of motor vehicle insurance policy complying with this article:

(A) A spouse or reciprocal beneficiary or other relative of a named insured, and

(B) A minor in the custody of a named insured or of a relative residing in the same household with a named insured.

A person resides in the same household if the person usually makes the person's home in the same family unit, which may include reciprocal beneficiaries, even though the person temporarily lives elsewhere.

HRS § 431:10C–103 (Supp.1997) (emphasis added). The pre–1998 definition of "insured" unambiguously limited coverage to the class of persons residing in the same household

with a named insured and specifically listed in subparts (2)(A) and (2)(B) of the definition.

In 1998, the definition of "insured" was revised to its current version. Act 275, 1998 Haw. Sess. L. 922. As amended, the language underscored above was deleted from the definition. The categories of individuals enumerated in subparts (2)(A) and (2)(B) as being encompassed within the definition of "insured" did not change. However, instead of unambiguously stating that the term "insured" means "the following [enumerated] persons not identified by name as an insured in any other contract of motor vehicle insurance policy[,]" the definition was restructured to its current format.

There is no legislative history that explains the reason for the revisions to the definition. Based on the deletion of the underscored language from the 1997 statute, it seems clear that the legislature intended to expand insurance coverage to otherwise qualifying persons residing in the same household with a named insured who were excluded from coverage under the pre–1998 law by virtue of their being named insureds on other automobile insurance policies. However, there is no indication that the legislature intended to expand the categories of individuals residing in the same household as the named insured who were entitled to claim coverage as an "insured."

### 2.

In *Peterson v. Hawaii Elec. Light Co.*, 85 Hawai'i 322, 944 P.2d 1265 (1997), the Hawai'i Supreme Court was called upon to construe HRS § 269–16(f) (1993),[7] a statute that authorized direct appeals of decisions of the Public Utilities Commission (PUC) to the

7. HRS § 269–16(f) (1993) provided:
 *From every order made by the [public utilities] commission [PUC] under this chapter that is final or, if preliminary, is of the nature defined by section 91–14(a),*[1] *an appeal shall lie to the supreme court subject to chapter 602* [2] *only by a person aggrieved in the contested case hearing provided for under this section* in the manner and within the time provided by chapter 602, and by the rules of court.

 ---
 [1] HRS § 91–14 (1993) provides, in relevant part:
 **Judicial review of contested cases.** (a) Any person aggrieved by a final decision and order

supreme court. The supreme court observed that the statute contained conflicting language:

> On the one hand, the statute generally authorizes an appeal "from every order made by the commission *under this chapter*" (emphasis added), *i.e.*, under HRS ch. 269, which outlines, *inter alia*, the general powers, duties, and investigative powers of the PUC. On the other hand, the statute simultaneously and specifically provides that "an appeal shall lie" *to this court* "only by a person aggrieved in a contested case hearing provided for *under this section*" (emphasis added), *i.e.*, under the section whose subject matter is restricted to "regulation of utility rates" and "ratemaking procedures."

*Id.* at 327, 944 P.2d at 1271 (brackets omitted).

In construing the ambiguous statute to determine whether it had appellate jurisdiction to consider an appeal, the supreme court examined the context of the words used in the statute and applied "two long-held maxims of statutory construction" to harmonize the wording of the statute with the purposes and policies underlying the statute. *Id.* at 328, 944 P.2d at 1272. The supreme court discussed these canons of statutory construction as follows:

> First, the canon of construction denominated *noscitur a sociis* provides that the meaning of words may be determined by reference to their relationship with other associated words and phrases. *State v. Merino*, 81 Hawai'i 198, 217, 915 P.2d 672, 691 (1996). Thus, when two or more words are grouped together, *noscitur a*

in a contested case or by a preliminary ruling of the nature that deferral of review pending entry of a subsequent final decision would deprive appellant of adequate relief is entitled to judicial review....

(b) ... [P]roceedings for review shall be instituted in the circuit court ... except where a statute provides for a direct appeal to the supreme court....
[2] HRS ch. 602 (1993), entitled "Courts of Appeal[,]" outlines, *inter alia*, the jurisdiction and powers of this court.
(Emphasis and footnotes added.)

*sociis* "requires that the more general and the more specific words of a statute must be considered together in determining the meaning of a statute, and that the general words are restricted to a meaning that should not be inconsistent with, or alien to, the narrower meanings of the more specific words of the statute." *In re Pacific Marine & Supply Co. Ltd.*, 55 Haw. 572, 578 n. 5, 524 P.2d 890, 894 n. 5 (1974); *see also* HRS § 1–15(1) (1993); N. Singer 2A *Sutherland Statutory Construction* § 47.16 (5th ed.1992) [hereinafter, *Sutherland Statutory Construction* ]. Accordingly, that portion of § 269–16(f) that appears to authorize direct appeals of *any* final order "made by" the PUC under HRS ch. 269 should be restricted by the more specific words of the statute, which authorize a direct appeal to this court—thereby bypassing the usual intervening review by the circuit court pursuant to HRS § 91–14(b), *see supra* note 2—only by a person aggrieved in a contested case hearing specifically conducted pursuant to HRS § 269–16.

A variation of *noscitur a sociis* is the maxim of *ejusdem generis*. Where general words follow specific words in a statute, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding specific words. *Richardson v. City and County of Honolulu*, 76 Hawai'i 46, 74, 868 P.2d 1193, 1201, *reconsideration denied*, 76 Hawai'i 247, 871 P.2d 795 (1994). "Where the opposite sequence is found, i.e., specific words following general ones, the doctrine is equally applicable, and restricts application of the general term to things that are similar to those enumerated." *Sutherland Statutory Construction* § 47.17. As that treatise explains,

> the doctrine of *ejusdem generis* is an attempt to reconcile an incompatibility between specific and general words so that all words in a statute can be given effect, all parts of a statute can be construed together and no words will be superfluous. If the general words are given their full and natural meaning, they would include the objects designat-

ed by the specific words, making the latter superfluous.

*Id.* Accordingly, the general phrase "from every order made by the commission under this chapter" precedes the more specific phrase limiting a direct appeal to this court to one taken "only by a person aggrieved in the contested case hearing provided for under this section," the scope of which, by the express terms of HRS § 269–16(a), is limited to "all rates, fares, charges, classifications, schedules, rules, and practices made, charged, or observed by any public utility." Applying the doctrine of *ejusdem generis*, the general language of HRS § 269–16(f) authorizing direct appeals to this court from any final order entered under HRS ch. 269 is therefore restricted by the specific language limiting such direct appeals to final orders entered in "ratemaking" cases under HRS § 269–16.

*Id.* at 328–29, 944 P.2d at 1272–73 (brackets omitted). The doctrine of *ejusdem generis* "is only applicable where legislative intent or language expressing that intent is unclear." *Sutherland Statutory Construction* § 47.18 (2000).

 In the definition of "insured" under HRS § 431:10C–103, the general phrase "[a] person residing in the same household with a named insured" is followed by the word "specifically" and subparts (2)(A) and (2)(B). The legislative history is silent as to why the legislature restructured the definition of "insured" in 1998. Based on the arrangement and context of the term "specifically" in HRS § 431:10C–103, and applying the doctrine of *ejusdem generis*, we conclude that the statutory definition of "insured" is restricted to only those persons residing in the same household with a named insured who are specifically listed in subparts (2)(A) and (2)(B) of the definition.

If we were to accept Holi's interpretation of the term "insured," subparts (2)(A) and (2)(B) of the definition of "insured" would be superfluous, since all of the categories of persons specifically enumerated in the definition would already be covered by the statute simply by residing in the same household with a UIM policy holder. Moreover, UIM

coverage would be extended to each and every person residing in the same household with a named insured under a UIM policy, regardless of family relationship. For example, unrelated roommates, college dorm mates, fraternity brothers, sorority sisters, live-in healthcare providers, boarders, and others who reside in the same household would be swept within the definition of "insured." For an insurance company issuing a UIM policy, such a broad reading of the definition of "insured" would present an incalculable underwriting risk.

### 3.

Case law from other jurisdictions supports a restrictive construction of the term "specifically." For example, in *Deerfield Commodities, Ltd. v. Nerco, Inc.*, 72 Or.App. 305, 696 P.2d 1096 (Or.Ct.App.1985), the Court of Appeals of Oregon decided a contract dispute between two companies over the sale of anthracite coal silt. *Id.* at 307, 696 P.2d at 1099. One of the points of error raised on appeal "relate[d] to the trial court's construction of the financing provision of [an] addendum" to the contract, which stated, in pertinent part:

> [Nerco] shall provide to the mine supplier and truckers pursuant to [Deerfield's] contract with said mine supplier and truckers, the required form of funding and guarantees, *specifically* four (4) Letters of Credit; one subsequent to the other, each in the sum of $275,000[.]

*Id.* at 328, 696 P.2d at 1111 (emphasis added). Deerfield contended that "the language specifying that Nerco shall provide 'the required form of funding and guarantees' is susceptible to an interpretation that Nerco's obligation was not limited to providing letters of credit in the amount specified[.]" *Id.* The court of appeals disagreed and held that "[t]he phrase 'the required form of funding and guarantees' is modified by the word 'specifically,' which means that what follows is a

delineation of the scope of the obligation." *Id.* at 329, 696 P.2d at 1111.

In the statutory definition of "insured," the general phrase "[a] person residing in the same household with a named insured" is also modified by the word "specifically." As in *Deerfield*, the two subparts that follow the word "specifically" delineate the scope of the general phrase. Therefore, other than the named insured(s), the only persons residing in the same household with a named insured who qualify as "insureds" under HRS § 431:10C–103 are "[a] spouse or reciprocal beneficiary or other relative of a named insured" and "[a] minor in the custody of a named insured or of a relative residing in the same household with a named insured."

### 4.

■ Holi is clearly not the spouse or reciprocal beneficiary of the Castilans. He is also not a minor in the custody of either the Castilans or a relative residing in the same household with the Castilans. The dispositive issue, therefore, is whether Holi was, at the time of the accident, a "relative" of the Castilans within the meaning of HRS § 431:10C–103. Holi urges this court to liberally construe the term to encompass "blended groups of related and unrelated persons who live together and consider themselves a family." He notes he is the father of the Castilans' grandson and argues that he is therefore "related" to the Castilans.

The term "relative" is not defined in HRS chapter 431. However, pursuant to its authority under HRS § 431:10C–214 (2005 Repl.),[8] the Hawai'i Insurance Commissioner promulgated a rule, Hawaii Administrative Rules (HAR) § 16–23–1, which defined "relative" for purposes of administering the Hawaii Motor Vehicle Insurance Law, HRS chapter 431:10C, as follows:

> *Definitions.* Unless the context indicates otherwise, *as used in this chapter:*

> (2) Adopt, amend and repeal such rules, pursuant to chapter 91, as the commissioner deems necessary to carrying out and fulfilling the purposes of this article, and to establishing standards for the prompt, fair and equitable disposition of all claims arising out of motor vehicle accidents[.]

**8.** HRS § 431:10C–214 (2005 Repl.) provides now, as it did when Holi initially filed his claim for UIM coverage, in relevant part, as follows:

> **Administration.** In order to carry out the provisions and fulfill the purpose of this article, the [insurance] commissioner shall:

> . . . .

. . . .

"Relative" means a "resident relative" as defined in section 431:10C–302(a)(9)(D)(ii), HRS.

HAR § 16–23–1 (1998) (emphasis added). The term "resident relative" is defined in HRS § 431:10C–302(a)(9)(D)(ii) (2005 Repl.) as follows:

"Resident relative" means a person who, at the time of the accident, is related by blood, marriage, or adoption to the named insured or resident spouse and who resides in the named insured's household, even if temporarily living elsewhere, and any ward or foster child who usually resides with the named insured, even if living elsewhere[.]

In situations where the terms of a statute are "less than clear," the Hawai'i Supreme Court has observed

the "well established rule of statutory construction that, where an administrative agency is charged with the responsibility of carrying out the mandate of a statute which contains words of broad and indefinite meaning, courts accord persuasive weight to administrative construction and follow the same, unless the construction is palpably erroneous." "Judicial deference to agency expertise is a guiding precept where the interpretation and application of broad or ambiguous statutory language by an administrative tribunal are the subject of review." Such deference "reflects a sensitivity to the proper roles of the political and judicial branches," insofar as "the resolution of ambiguity in a statutory text is often more a question of policy than law."

*In re Water Use Permit Applications,* 94 Hawai'i 97, 144–45, 9 P.3d 409, 456–57 (2000) (brackets and citations omitted). The definition of "relative" in HAR § 16–23–1 is therefore entitled to judicial deference when this court interprets the phrase "other relative" in the definition of "insured" in HRS § 431:10C–103. *Id.* at 145, 9 P.3d at 456.

AIG's Policy with the Castilans limited UIM coverage for a non-policy holder to a resident "family member." Additionally, the Policy defined "family member," in relevant part, as "a person related to [the named insured] by blood, marriage or adoption who is a resident of [the named insured's] household, or such person while temporarily residing elsewhere." The Policy thus incorporated the HAR § 16–23–1 definition of "resident relative" and was not in conflict with HRS § 431:10C–103, as Holi maintains.

Applying the HAR § 16–23–1 definition of "relative" to Holi, it is clear that he was not related to the Castilans by marriage or adoption. As to whether Holi was related to the Castilans "by blood," the circuit court concluded in its August 4, 2003 order granting AIG's May 2, 2003 motion to dismiss as follows:

The Court concurs with [AIG's] interpretation that relationship by blood means relationship by descent from a common ancestor and that this is a commonly accepted definition. As [Holi] was not a descendant of an ancestor common with the Castillians [ (sic)], nor adopted by them, nor married to a daughter or other relative of them, [Holi] cannot qualify as an "insured" on the sole basis that he resided in the same household with the Castillians [ (sic)].

On appeal, Holi has not challenged this determination by the circuit court.

Therefore, because Holi is not a relative of the Castilans within the meaning of HAR § 16–23–1, he is not entitled to UIM coverage under the Castilans' insurance policy.

### B. *The Circuit Court Did Not Err in Dismissing Holi's Remaining Claims*

Holi alleges that the circuit court erred in dismissing his causes of action for breach of contract and/or contractual warranties, violation of the Hawaii Insurance Code, breach of the covenant of good faith and fair dealing, negligent and/or intentional infliction of emotional distress, and punitive damages. In light of our conclusion that Holi did not qualify as an "insured" under the terms of the Castilans' insurance policy, AIG was not liable for these claims. Therefore, the circuit court correctly dismissed the claims.

### C. *The Circuit Court Did Not Err in Denying AIG's Claims for Attorneys' Fees and Costs*

#### 1.

AIG requested that the circuit court award it attorneys' fees and costs under the

authority established by HRS §§ 607–14.5 [9] and 431:10C–211.[10] Both statutes authorize the granting of attorneys' fees and costs when a court determines that a claim raised is frivolous. The circuit court did not find Holi's claim against AIG to be frivolous.

The Hawai'i Supreme Court has defined a frivolous claim as one that is "so manifestly and palpably without merit, so as to indicate bad faith on the pleader's part such that argument to the court was not required." *Coll v. McCarthy*, 72 Haw. 20, 29, 804 P.2d 881, 887 (1991) (brackets and quotation marks omitted).

In light of our conclusion that the statutory definition of "insured" was ambiguous, we agree with the circuit court that Holi's claim was not frivolous. Accordingly, the circuit court did not err in denying AIG's request for attorneys' fees and costs pursuant to HRS §§ 607–14.5 and 431:10C–211.

### 2.

In its cross-appeal, AIG argues that because this case is in the nature of assumpsit and AIG prevailed, HRS § 607–14 [11] requires that it be awarded attorneys' fees and costs. AIG further argues that the circuit court applied the wrong legal standard when it rejected AIG's request for attorneys' fees and costs upon finding Holi's claim to be non-frivolous because HRS § 607–14 mandates the award of attorneys' fees and costs to the prevailing party irrespective of the merits of the claims or defenses raised.

Holi's complaint sought a declaratory judgment that he was an "insured" under the Policy issued to the Castilans by AIG. The circuit court correctly determined that Holi was not an "insured" and therefore, correctly dismissed Holi's other claims. Even if we were to assume that HRS § 607–14, rather than the more specific attorneys' fees statute governing motor vehicle insurance contracts in HRS § 431:10C–211, governs AIG's request for attorneys' fees and costs, we cannot conclude, under these circumstances, that the circuit court erred in denying AIG's request for attorneys' fees and costs pursuant to HRS § 607–14.

### CONCLUSION

Based on the foregoing discussion, we affirm: (1) the Order Granting Defendant AIG Hawaii Insurance Company, Inc.'s Motion to Dismiss, Filed on May 2, 2003, entered by the circuit court on August 4, 2003; and (2) the Judgment, entered by the circuit court on August 19, 2003.

---

**9.** *See* footnote 4.

**10.** *See* footnote 5.

**11.** *See* footnote 3.