217 P.3d 951

CHARMAINE TAVARES CAMPAIGN, a Candidate Committee organized under (and as defined by) the Hawai'i Election Campaign Contributions and Expenditures Act, Plaintiff–Appellee,

v.

Barbara U. WONG, in her capacity as the Executive Director of the Campaign Spending Commission of the State of Hawai'i, Defendant–Appellant,

and

Quong Enterprises, L.L.C., a California limited liability company, Plaintiff/Intervenor–Appellee

v.

Barbara U. Wong, in her capacity as the Executive Director of the Campaign Spending Commission of the State of Hawai'i, Defendant–Appellant.

No. 28729.

Intermediate Court of Appeals of Hawai'i.

June 25, 2009.

Russell A. Suzuki, Robyn B. Chun, Deputy Attorneys General, on the briefs, for Defendant–Appellant.

William F. Crockett (Crockett and Nakamura), Wailuku, on the briefs, for Plaintiff–Appellee, Charmaine Tavares Campaign and Plaintiff/Intervenor–Appellee Quong Enterprises, L.L.C.

FOLEY, Presiding Judge, FUJISE and LEONARD, JJ.

Opinion of the Court by LEONARD, J.

This is a statutory construction case concerning the campaign contribution limits set forth in Hawaii Revised Statutes (**HRS**) § 11–204(a)(1)(C) and (b) (Supp.2005). Defendant–Appellant Barbara U. Wong (**Wong**), in her capacity as the Executive Director of the Campaign Spending Commission of the State of Hawai'i (**Commission**), appeals from the Findings of Fact, Conclusions of Law, and Order filed on July 23, 2007, and the Final Declaratory Judgment filed on August 10, 2007 (**Judgment**), by the Circuit Court of the Second Circuit (**Circuit Court**), in favor of Plaintiff–Appellee Charmaine Tavares Campaign (**Tavares**) and Plaintiff/Intervenor–Appellee Quong Enterprises, L.L.C. (**Quong**) (collectively, **Appellees**), and against Wong.[1] Wong argues that Quong's $2,000 campaign contribution to Tavares violated the $1,000 limit in HRS § 11–204(b), which applies to any contribution to a "noncandidate committee." Wong requests the reversal of the Judgment primarily on the ground that the Circuit Court erred in concluding that Quong's contribution was lawful under the $4,000 limit prescribed in HRS § 11–204(a)(1)(C) for any contribution to a candidate or a "candidate's committee." Based on the arguments presented, the record on appeal, and the well-established rules of statutory construction, we conclude that HRS § 11–204(b) did not apply to Quong's contribution to Tavares and that Quong's contribution was lawful under HRS § 11–204(a)(1)(C). We affirm.

## I. BACKGROUND

The Circuit Court's findings of fact (**FOFs**) are undisputed, including the following:

2. Charmaine Tavares ("Tavares") was a candidate for election to the Office of Mayor of the County of Maui during the 2006 election.

3. The Maui County Mayor is elected to a term of four years.

4. Plaintiff [Charmaine Tavares Campaign] is a "candidate committee" organized under the *Hawai'i Election Campaign Contributions and Expenditures Act,* Hawai'i Revised Statutes ("HRS"), § 11–191 *et seq.* (the "Act").

5. Plaintiff was organized "to make expenditures and to accept contributions" to support Tavares' campaign to be elected Maui County Mayor during the 2006 election.

6. At the commencement of Tavares' 2006 election campaign, Plaintiff's representatives informed Tavares' supporters that the Act limited each person to a $4,000 contribution based upon HRS § 11–204(a)(1)(C) (2005) that provides:

---

1. The Honorable Joseph E. Cardoza presided.

No person or any other entity shall make contributions to:

\* \* \*

(C) A candidate seeking nomination or election to a four-year non-statewide office or to the candidate's committee in an aggregate amount greater than $4,000 during an election period.

7. On April 25, 2006, Plaintiff–Intervenor [Quong] made a contribution in the amount of $2,000 directly to Plaintiff.

. . . .

11. Plaintiff–Intervenor [Quong] was not organized for "the purpose of making contributions or expenditures to influence the nomination for election, the election of any candidate to political office, or for or against any issue on the ballot."

12. The $2,000 contribution made by Plaintiff Intervenor [Quong] on April 25, 2006 was made from the Plaintiff–Intervenor's general business funds. The source of the contribution was not attributable to other persons who were interested in advancing Tavares' election as Maui County Mayor during the 2006 election.

13. On March 10, 2006, Talboy Construction, Inc. ("Talboy") made a $2,000 contribution to Plaintiff. . . .

14. On May 9, 2006, Cheeseburger in Paradise, Inc. ("Cheeseburger") made a $1,000 contribution to Plaintiff. . . .

15. On May 9, 2006, Cheeseburger in Paradise–Waikiki ("Cheeseburger–Waikiki") made a $1,000 contribution to Plaintiff. . . .

16. Defendant [Wong] does not assert that any of the aforementioned contributors had a "political action committee." All contributions in question were made directly from a business account to Plaintiff and did not pass through any political action committee or other account.

. . . .

18. By letters dated August 24,, [sic] 2006, Defendant [Wong] informed Plaintiff–Intervenor [Quong] and the other aforementioned contributors that each had violated the Act by making the contributions described above, that such contributions constituted "excess contributions" under the Act, and that they were subject to a "fine" under the Act.

On August 24, 2006, on behalf of the Commission, Wong wrote a letter to Quong, stating in relevant part:

Hawaii Revised Statutes ("HRS") section 11–204(b), effective January 1, 2006, states the following:

(b) No person or any other entity shall make contributions to a noncandidate committee, in an aggregate amount greater than $1,000 in an election.

This law prohibits businesses from making contributions directly from their treasuries or from their treasuries to their noncandidate committee of more than $1,000 in the aggregate for all candidate and noncandidate committees in an election, meaning businesses may contribute a total of $1,000 through the Primary election on September 23, 2006, and may contribute up to a total of $1,000 between the Primary and General elections.

A preliminary review of candidate Charmine [sic] Tavares's Disclosure Reports indicates that Quong Enterprises, L.L.C. ("Quong") made a contribution of $2,000 on April 28, 2006, of which $1,000 is in excess of the contribution limit.

Quong may contribute up to $1,000 to the Charmaine Tavares Campaign through September 23, 2006 (primary election), then may register as a noncandidate committee with the Commission, and contribute a second $1,000 to the Charmaine Tavares Campaign between September 24, 2006 and November 7, 2006 (the general election).

Wong sent similar letters to Talboy Construction, Inc. (**Talboy**) and Cheeseburger in Paradise, Inc. on August 24, 2006. The letter to Cheeseburger in Paradise, Inc. also referenced Cheeseburger Island Style aka Cheeseburger in Paradise, Inc.—Waikiki. Cheeseburger in Paradise, Inc. and Cheeseburger in Paradise, Inc.—Waikiki (collectively, **Cheeseburger**) are partners.

Paul Quong (**Mr. Quong**), the manager of Quong, stated in a declaration, filed on March 27, 2007, that Quong is a limited

liability company organized under the laws of the State of California. Quong's Operating Agreement provides:

> "**Business.** The Company is to be formed to engage in: (i) the acquisition of real property, or an interest therein, for the development of shopping centers and other real estate-related projects and centers; and (ii) the development, refurbishment or rehabilitation of shopping centers and other commercial real estate-related projects and centers."

Mr. Quong declared that this provision states the organizational purpose of Quong and that Quong was not organized for "the purpose of making contributions or expenditures to influence the nomination for election, the election of any candidate to political office, or for or against any issue on the ballot." Mr. Quong also stated:

> The $2,000 contribution made by Quong Enterprises, L.L.C. to the Charmaine Tavares Campaign ... was made from the general business funds of Quong Enterprises, L.L.C. The source of such contribution was not other persons who were interested in advancing Charmaine Tavares' election to the Office of Mayor of the County of Maui during the 2006 election.

On November 28, 2006, Tavares filed a Complaint against Wong, seeking declaratory and injunctive relief. In relevant part, Tavares's prayer for relief states:

> (1) The Court declare and adjudge, in accordance with the *Hawaii Declaratory Judgment Act, Haw.Rev.Stat.* Ch. 632, that each Tavares Contributor [Talboy, Quong, and Cheeseburger, and other contributors similarly situated] was entitled to make, and the Charmaine Tavares Campaign was entitled to receive, under the Act, a Contribution in an amount that did not exceed $4,000, for the 2006 election to the office of Mayor of the County of Maui.

> (2) The Court declare and adjudge, in accordance with the *Hawaii Declaratory Judgment Act, Haw.Rev.Stat.* Ch. 632, that none of any Contribution made by a Person to the Charmaine Tavares Campaign for the 2006 election to the office of Mayor

of Maui County, which did not exceed $4,000, constitutes an Excess Contribution under the Act.

On January 24, 2007, upon the stipulation of the parties, the Circuit Court allowed Quong to intervene in this action and join as a plaintiff.[2] Thereafter, the parties each filed motions for summary judgment. After a May 4, 2007 hearing, the Circuit Court granted Tavares's and Quong's motions for summary judgment on the claims seeking declaratory relief and denied Wong's motion for summary judgment. Tavares and Quong withdrew their claims for injunctive relief.

On July 23, 2007, the Circuit Court filed its Findings of Fact, Conclusions of Law, and Order. Judgment was entered on August 10, 2007. On September 4, 2007, Wong timely filed a notice of appeal.

## II. *POINTS ON APPEAL*

Wong contends that the Circuit Court erred in its interpretation of HRS § 11–204(a)(1)(C) and HRS § 11–204(b). More specifically, Wong raises the following points of error:

1. The Circuit Court incorrectly interpreted HRS § 11–204(a)(1)(C) as allowing Quong to contribute, and Tavares to accept, $2,000 in campaign contributions.

2. The Circuit Court erred in entering conclusions of law (**COLs**) 12, 15, 17, 18, 19, and 20:

> 12. The language of HRS § 11–204(a)(1)(C) is plain and clear. The above contributors, who were not noncandidate committees, were permitted to make direct contributions to Plaintiff, a candidate committee, not exceeding an aggregate amount of $4,000.

> 15. Laws *in pari materia,* or upon the same subject matter, shall be construed with reference to each other. HRS § 1–16. What is clear in one statute may be called in aid to explain what is doubtful in another. *State v. Putnam,* 93 Hawai'i 362, 370 n. 9, 3 P.3d 1239, 1248, n. 9 (2000). However, there is no doubt or ambiguity

---

2. On May 4, 2007, upon the stipulation of the parties, the Circuit Court allowed the Attorney General of the State of Hawai'i to file an *amicus curiae* brief.

here. Thus, there is no reason to conduct such a tortuous construction of the statute.

17. Plaintiff–Intervenor's contribution of $2,000 to Plaintiff during the 2006 Maui County Mayor election was not a contribution "to a noncandidate committee." Thus, the contribution did not violate HRS § 11–204(b). To the contrary, said contribution was a lawful contribution under HRS. [sic] § 11–204(a)(1)(C) (2005) as a contribution to a candidate seeking nomination or election to a four-year non-statewide office or to the candidate's committee that did not exceed $4,000.

18. The contribution of Talboy in the amount of $2,000 and the contributions Cheeseburger and Cheeseburger–Waikiki in the aggregate amount of $2,000 to Plaintiff during the 2006 Maui County Mayor election were not contributions "to a noncandidate committee." Thus, said contributions did not violate HRS § 11–204(b). To the contrary, the contributions were lawful contributions under HRS § 11–204(a)(1)(C) (2005) as contributions to a candidate seeking nomination or election to a four-year non-statewide office or to the candidate's committee that did not exceed $4,000.

19. With respect to each of the above contributions, Plaintiff is not obligated to make an "escheat" payment to the State of Hawai'i under the Act.

20. Although the Court has determined that HRS § 11–204(a)(1)(C) (2005) is clear in its meaning, if one is to examine the legislative history, the same supports the identical plain and literal reading of HRS § 11–204 (2005).

3. The Circuit Court erred in entering paragraphs 1 through 6 of the Final Declaratory Judgment:

Pursuant to the Findings Of Fact, Conclusions Of Law, And Order entered in the above-entitled action on July 23, 2007, the Court Hereby Enters The Following Final Declaratory Judgment.

1. The "contribution" made by plaintiff-intervenor Quong Enterprises, L.L.C. to plaintiff Charmaine Tavares Campaign in the amount of $2,000 during the 2006 election for the office of Mayor of the County of Maui was a lawful Contribution under the *Hawaii Election Campaign Contributions And Expenditures Act, Haw. Rev. Stat.* § 11–191 et seq. (the "Act").

2. The "contribution" made by Talboy Construction, Inc. to plaintiff Charmaine Tavares Campaign in the amount of $2,000 during the 2006 election for the office of Mayor of the County of Maui was a lawful Contribution under the Act.

3. The "contribution" made by Cheeseburger In Paradise, Inc., to plaintiff Charmaine Tavares Campaign, in the amount of $1,000 during the 2006 election for the office of Mayor of the County of Maui, and the "contribution" made by Cheeseburger In Paradise–Waikiki to plaintiff Charmaine Tavares Campaign, in the amount of $1,000 during the 2006 election for the office of Mayor of the County of Maui, were lawful Contributions under the Act.

4. None of such Contributions made by plaintiff-intervenor Quong Enterprises, L.L.C., Talboy Construction, Inc., Cheeseburger In Paradise, Inc., and Cheeseburger In Paradise–Waikiki to plaintiff Charmaine Tavares Campaign constituted "excess contribution" under the Act.

5. Other persons and entities, similarly situated, were entitled to make, and plaintiff Charmaine Tavares Campaign was entitled to receive, under the Act, a "contribution" for the 2006 election to the office of Mayor of the County of Maui in an amount that did not exceed $4,000.

6. None of any such Contribution made by any other person or entity, similarly situated, to the plaintiff Charmaine Tavares Campaign for the 2006 election to the office of Mayor of the County of Maui, in an amount that did not exceed $4,000, constituted an "excess contribution" under the Act.

III. *STANDARD OF REVIEW*

 The interpretation of a statute is a question of law subject to de novo review. *Kaho'ohanohano v. Dep't of Human Servs., State of Haw.,* 117 Hawai'i 262, 281, 178 P.3d 538, 557 (2008). "Where the language of the statute is plain and unambiguous, our only

duty is to give effect to its plain and obvious meaning." *Id.* (citation omitted). Our statutory construction is also guided by the following well-established principles:

> [When construing a statute,] our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself. And we must read statutory language in the context of the entire statute and construe it in a manner consistent with its purpose.
>
> When there is doubt, doubleness of meaning, or indistinctiveness or uncertainty of an expression used in a statute, an ambiguity exists.
>
> In construing an ambiguous statute, the meaning of the ambiguous words may be sought by examining the context, with which the ambiguous words, phrases, and sentences may be compared, in order to ascertain their true meaning. Moreover, the courts may resort to extrinsic aids in determining legislative intent. One avenue is the use of legislative history as an interpretive tool.
>
> This court may also consider the reason and spirit of the law, and the cause which induced the legislature to enact it to discover its true meaning.

*Lingle v. Hawai'i Gov't Employees Ass'n, AFSCME, Local 152,* 107 Hawai'i 178, 183, 111 P.3d 587, 592 (2005) (internal quotation marks, brackets, and ellipses omitted and block quote format changed). *Kapuwai v. City & County of Honolulu,* 119 Hawai'i 304, 309, 196 P.3d 306, 311 (App. 2008) (brackets in original).

## IV. DISCUSSION

### A. Key Provisions of the Campaign Spending Law

HRS § 11–204 is part of Hawaii's Election Campaign Contributions and Expenditures Act, which is commonly referred to as the campaign spending law. HRS § 11–204 provides in relevant part:

> § 11–204 **Campaign contributions; limits as to persons.** (a)(1) No person or any other entity shall make contributions to:
>
> . . . .
>
> (C) A candidate seeking nomination or election to a four-year non-statewide office or to the candidate's committee in an aggregate amount greater than $4,000 during an election period.
>
> . . . .
>
> (b) No person or any other entity shall make contributions to a noncandidate committee, in an aggregate amount greater than $1,000 in an election.

A "person" is "an individual,[3] partnership, committee, association, corporation, or labor union and its auxiliary committees." HRS § 11–191 (Supp.2005).

A "candidate's committee" is a "committee"[4] which "makes an expenditure or ac-

---

**3.** An "individual" is a natural person. HRS § 11–191.

**4.** Pursuant to HRS § 11–191, a "committee" is:

(1) Any organization, association, or individual that accepts or makes a contribution or makes an expenditure for or against any:
(A) Candidate;
(B) Individual who files for nomination at a later date and becomes a candidate; or
(C) Party;
with or without the authorization of the candidate, individual, or party. In addition, the term "committee" means any organization, association, or individual who accepts or makes a contribution or makes an expenditure for or against any question or issue appearing on the ballot at the next applicable election; or

(2) Any organization, association, or individual that raises or holds money or anything of value for a political purpose, with or without the consent or knowledge of any:
(A) Candidate;
(B) Individual who files for nomination at a later date and becomes a candidate; or
(C) Party; and
subsequently contributes money or anything of value to, or makes expenditures on behalf of, the candidate, individual, or party. Notwithstanding any of the foregoing, the term "committee" shall not include any individual making a contribution or expenditure of the individual's own funds or anything of value that the individual originally acquired for the individual's own use and not for the purpose of evading any provision of this subpart, or any organization, which raises or expends funds for the sole purpose of the production and dissemination of informational or educational advertising.

cepts a contribution in behalf of a candidate[5] with the candidate's authorization. A candidate shall have only one authorized candidate's committee." HRS § 11–191.

A "noncandidate committee" is a committee that "has the purpose of making contributions or expenditures to influence the nomination for election, the election of any candidate to political office, or for or against any issue on the ballot, but does not include a candidate's committee." HRS § 11–191.

" 'Election period' means the two-year period between general election days if a candidate is seeking nomination or election to a two-year office and the four-year time period between general election days if a candidate is seeking nomination or election to a four-year office." HRS § 11–191.

### B. *HRS § 11–204 is Clear and Unambiguous*

■ The campaign contribution limits set forth in HRS § 11–204(a)(1)(C) and 11–204(b) are quite clear. Under HRS § 11–204(a)(1)(C), a person or entity, including a corporation like Quong, can make contributions of up to $4,000 per election period, to a *candidate* for a four-year non-statewide office, or to that *candidate's committee.* HRS § 11–204(b), on the other hand, limits a person or entity's contributions to a *noncandidate committee* to an aggregate of $1,000 per election. Whether construed separately or together, no ambiguity exists. The former part limits contributions to a candidate or a candidate's committee and the latter part limits contributions to a noncandidate committee.

Wong makes various arguments that HRS §§ 11–204(a)(1)(C) and 11–204(b), independently and when construed together, are ambiguous. Wong first argues that, because "other entity" is not separately defined, the statute is ambiguous. We reject that contention. The phrase "any other entity" clearly means any entity that is not already included in the broad definition of "person." The lack of a separate statutory definition for this phrase does not lead to any doubt or confu-

sion. No person or entity of any kind can exceed the contribution limits set forth in HRS §§ 11–204(a)(1)(C) and 11–204(b).

Similarly, we reject Wong's rather convoluted argument that the use of the word "to" is ambiguous in the context of the HRS § 11–204(b) language providing that no person or other entity shall "make contributions *to* a noncandidate committee, in an amount greater than $1,000 in an election." Wong argues that, consistent with the campaign spending law's registration and reporting objectives, "to" could mean either to a "physically separate" noncandidate committee or it could mean to a noncandidate committee as an "accounting mechanism or artifice to account for, or track, the disbursement of corporate funds to a candidate or candidate committee on a corporate financial ledger." Wong further argues that, in the overall context of the campaign spending law, HRS § 11–204(b) must be read to *require* that any contribution, other than a contribution by a natural person, must be made to a noncandidate committee in the first instance. This interpretation would read language into the statute that simply is not there.

We recognize that other parts of the campaign spending law include registration and reporting requirements for candidate committees and noncandidate committees. *See, e.g.,* HRS §§ 11–194 (requiring registration of candidate and noncandidate committees), 11–212 & 11–213 (requiring, *inter alia,* preliminary, final, and supplemental reports by candidate and noncandidate committees). However, these other requirements do not cast doubt on the contribution limit set forth in HRS § 11–204(b). HRS § 11–204(b) sets a limit for contributions to *any* noncandidate committee; it does not require that every contribution by an entity be made in the first instance to a noncandidate committee. A straightforward reading of this contribution limit is not at odds with the other requirements of the campaign spending law. Indeed, Wong's interpretation would render meaningless HRS § 11–204(a)(1)(C)'s allowance of contributions up to $4,000 by a person, which can be a corporation or partnership, or any

---

5. Pursuant to HRS § 11–191, a "candidate" is an individual who seeks nomination for election, or seeks election, to office.

other entity, and therefore must be rejected. *See, e.g., Tax Appeal of Dir. of Taxation v. Med. Underwriters of Cal.*, 115 Hawai'i 180, 196, 166 P.3d 353, 369 (2007), citing *Camara v. Agsalud*, 67 Haw. 212, 215–16, 685 P.2d 794, 797 (1984) ("It is a cardinal rule of statutory construction that courts are bound, if rational and practicable, to give effect to all parts of a statute, and that no clause, sentence, or word shall be construed as superfluous, void, or insignificant if a construction can be legitimately found which will give force to and preserve all the words of the statute.").

### C. Wong's Other Statutory Construction Arguments

■ Wong argues that the Circuit Court's ruling defeats the purpose of the campaign spending law's disclosure and reporting provisions. We respectfully disagree. HRS § 11–204(a)(1)(C) and 11–204(b) set contribution limits; these parts of the statute neither mandate nor inhibit reporting of campaign contributions. As noted above, registration and reporting requirements are set forth elsewhere in the statute. Neither the Commission nor this court can insert additional requirements into HRS § 11–204 to strengthen or expand on other provisions of the campaign spending law.[6] That is the province of the Legislature.

Wong also argues that, based on the legislative history of HRS § 11–204(b), the Legislature intended that all campaign contributions from corporate treasuries be limited to $1,000. We have carefully reviewed Wong's references to the campaign spending law's legislative history from 1981, 1987, 1995, and 2005. However, we can glean nothing from the legislative history that contradicts or is inconsistent with our reading of the plain and unambiguous language of HRS § 11–204(b). Both HRS §§ 11–204(a)(1)(c) and 11–204(b)

provide contribution limits for corporations, as well as other persons and entities. Nothing in the legislative history indicates that the limit in HRS § 11–204(b) for contributions to noncandidate committees was intended to override the limit in HRS § 11–204(a)(1)(C) for contributions to candidates and candidate committees.

### D. Quong's Contribution Was Not Unlawful

■ It is undisputed that Quong made its $2,000 contribution to Tavares and that Tavares is a candidate committee, not a noncandidate committee. The term for the Office of Mayor for the County of Maui is four years. *See* Charter of the County of Maui § 7–2(5) (2003). Therefore, the Circuit Court did not err in concluding that, pursuant to HRS § 11–204(a)(1)(C), Quong was permitted to contribute, and Tavares was permitted to accept, Quong's contribution, as it did not exceed $4,000. Nor did the Circuit Court err in concluding, for essentially the same reasons, that the contributions made by Talboy and Cheeseburger were lawful.

### E. The Constitutionality of HRS § 11–204(b)

In the Answering Brief, Appellees question the constitutionality of HRS § 11–204(b) *as interpreted by the Commission.* As we have concluded that the Circuit Court correctly interpreted HRS §§ 11–204(a)(1)(C) and 11–204(b), we need not address the constitutional question posed by Appellees.[7]

### V. CONCLUSION

For these reasons, we affirm the Circuit Court's August 10, 2007 Judgment.

---

6. Wong urges the court to give deference to the Commission's interpretation of HRS § 11–204. We recognize that "deference to agency expertise is a guiding precept where the interpretation and application of broad or *ambiguous statutory language* by an administrative tribunal are the subject of review." *Holi v. AIG Haw. Ins. Co., Inc.*, 113 Hawai'i 196, 206, 150 P.3d 845, 855 (App. 2007) (emphasis added) (citation omitted). As we find no ambiguity in the contribution limits set forth in HRS § 11–204, we need not reach

the parties' arguments regarding whether and to what extent deference to Wong would otherwise be required.

7. Similarly, we need not address the Attorney General's arguments that (a) the doctrine of constitutional avoidance militates against adopting the Commission's interpretation of the statute and (b) the record before this court is insufficient to decide the constitutional issues.