NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

17-P-757                                        Appeals Court


  DERRICK MARTINS OLIVEIRA  vs.  THE COMMERCE INSURANCE COMPANY.


No. 17-P-757.


Suffolk.     March 9, 2018. - October 23, 2018.


Present:  Trainor, Meade, Lemire, Ditkoff, & McDonough, JJ.[1]



Insurance, Motor vehicle insurance, Uninsured motorist,
     Coverage.  Contract, Insurance.  Practice, Civil, Summary
     judgment.  Words, "Household member," "Related by blood."




     Civil action commenced in the Superior Court Department on
June 22, 2015.

     The case was heard by Karen F. Green, J., on motions for
summary judgment.



     Brad W. Greenberg for the plaintiff.
     John P. Donohue for the defendant.

---

     [1] This case was initially heard by a panel comprised of
Justices Lemire, Ditkoff, and McDonough.  After circulation of a
majority and a dissenting opinion to the other justices of the
Appeals Court, the panel was expanded to include Justices
Trainor and Meade.  See Sciaba Constr. Corp. v. Boston, 35 Mass.
App. Ct. 181, 181 n.2 (1993).

DITKOFF, J.  The plaintiff, Derrick Martins Oliveira, filed suit against the insurer, The Commerce Insurance Company, to obtain coverage as a "household member" under an insurance policy held by the mother and stepfather of his long-term partner, with whom he has a child.  To resolve this dispute, we must confront the question whether the phrase "related by blood," in its usual and ordinary sense, reaches two persons with no blood relationship with each other whatsoever, but who each have a blood relationship with a third person.  Concluding that the Superior Court judge correctly determined that two persons without a blood relationship with each other are not "related by blood," in the common understanding of the term, we affirm the summary judgment for the insurer.

1.  Background.  Since 2012, the plaintiff has lived with his long-term partner in a single-family unit with her mother and stepfather.  The plaintiff is not married to his partner, but they have a minor son together.

On July 18, 2014, the plaintiff was injured in a serious single-automobile accident while a passenger in a vehicle owned and operated by a third party.  The plaintiff sustained fractures to his spine and ribs, tore ligaments in his knee, and suffered substantial lacerations and scarring on his scalp.  He was hospitalized for four days, required long-term disability,

and incurred medical bills in excess of $40,000. The driver was insured under her own policy, and the plaintiff accepted a settlement with the driver and the driver's insurer to the full extent of that policy, $100,000.[2]

The insurance company here provided coverage for the two vehicles used by the residents of the plaintiff's home under a policy issued to his partner's mother and stepfather (policyholders). The policy provided, inter alia, $250,000 of coverage per person in underinsured motorist (UIM) coverage for "damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance." The policy for UIM coverage included coverage for:

> "1. You, while occupying your auto, while occupying an auto you do not own, or if injured as a pedestrian.
>
> "2. Any household member, while occupying your auto, while occupying an auto not owned by you, or if injured as a pedestrian. If there are two or more policies which provide coverage at the same limits, we will only pay our proportionate share. We will not pay damages to or for any household member who has a Massachusetts auto policy of his or her own or who is covered by a Massachusetts auto policy of another household member providing underinsured auto insurance with higher limits."

---

[2] There seems to be no dispute, at least for summary judgment purposes, that this was insufficient to compensate the plaintiff for the accident.

The policy also included a definition for "household member":

"9. Household Member - means anyone living in your household who is related to you by blood, marriage or adoption. This includes wards, step-children or foster children."

The plaintiff claimed coverage under the policy as a "household member" of the policyholders.[3] The insurer denied the claim, contending that the plaintiff was not eligible for coverage because he did not "meet the definition of a 'household member'" under the policy. In response, the plaintiff filed a complaint in Superior Court, alleging breach of contract and seeking a judgment declaring that the plaintiff was a "household member" under the policy and, as such, was eligible for coverage. On cross-motions for summary judgment, the plaintiff argued that he was related by blood to the policyholders through his biological son and therefore entitled to coverage as a "household member."[4] After a hearing, a judge denied the plaintiff's motion and granted the insurer's motion. The judge

---

[3] The plaintiff was listed with his partner and her stepfather on the coverage selections page of the policy as operators of the two vehicles kept at the residence. Being listed as an operator, however, does not qualify the plaintiff for UIM coverage under the policy. See Kanamaru v. Holyoke Mut. Ins. Co., 72 Mass. App. Ct. 396, 400-401 (2008).

[4] The plaintiff conceded he was not related by marriage or adoption to the policyholders.

found that the plaintiff was not related by blood to either policyholder, and thus he was not a "household member" and was not entitled to UIM coverage under the policy. This appeal followed.

2. Discussion. "We review a grant of summary judgment de novo." Deutsche Bank Nat'l Trust Co. v. Fitchburg Capital, LLC, 471 Mass. 248, 252-253 (2015). On appeal, the issue is "whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." Molina v. State Garden, Inc., 88 Mass. App. Ct. 173, 177 (2015), quoting Augat, Inc. v. Liberty Mut. Ins. Co., 410 Mass. 117, 120 (1991). Here, there is no dispute concerning the material facts, but only concerning the proper construction of the insurance policy.

Our task is to "construe the words of the policy in their usual and ordinary sense." Mahoney v. American Auto. Ins. Co., 83 Mass. App. Ct. 677, 679 (2013), quoting Hakim v. Massachusetts Insurers' Insolvency Fund, 424 Mass. 275, 280 (1997). Because "the language of the policy is determined by the insurance commissioner," construction of the policy language "is exempt from the usual construction against the drafter; rather, it is interpreted in its ordinary sense." Kanamaru v.

Holyoke Mut. Ins. Co., 72 Mass. App. Ct. 396, 399 (2008), citing Chenard v. Commerce Ins. Co., 440 Mass. 444, 445-446 (2003).[5]

In its usual and ordinary sense, the phrase "related by blood" denotes a genetic relationship between the two persons asserted to be related. See Black's Law Dictionary 1402 (9th ed. 2009) (defining "blood relative" as "[o]ne who shares an ancestor with another"). See also Allstate Ins. v. Shelton, 105 F.3d 514, 516-517 (9th Cir. 1997) ("resident relative" requires relationship of blood or affinity; where unmarried partners were living together, child of one partner was not relative of other partner); Remington v. Aetna Cas. & Sur. Co., 35 Conn. App. Ct. 581, 587 (1994) (stepson related by affinity but not by blood); People v. Zajaczkowski, 493 Mich. 6, 14 (2012) (where deoxyribonucleic acid test established that defendant and victim "do not share a relationship arising by descent from a common ancestor," they were not related by blood); Lewis v. Farmers Ins. Exch., 315 Mich. Ct. App. 202, 217 (2016) (automobile

---

[5] The plaintiff makes no claim that the language chosen by the Commissioner of Insurance (Commissioner) fails to accord with G. L. c. 175, § 113L. In any event, "the Commissioner of Insurance . . . decides what the terms of a standard policy will be, and the commissioner's interpretation of the relevant statutes, although not controlling, is entitled to deference." Colby v. Metropolitan Prop. & Cas. Ins. Co., 420 Mass. 799, 806 (1995) (citations omitted). The Commissioner's language reflects a reasonable interpretation of "resident relative," G. L. c. 175, § 113L (5), as we have previously held. Kanamaru, 72 Mass. App. Ct. at 401.

insurance policy covering person related "by blood, marriage or adoption" did not reach person whose aunt married insured's uncle).  Cf. State Farm Mut. Auto. Ins. Co. v. Boyd, 377 F. Supp. 2d 511, 514-515 (D.S.C. 2005) (former foster child of insured's brother not related "by blood, marriage or adoption").

Here, there is no genetic relationship between the plaintiff and the policyholders; rather the plaintiff relies on the fact that both the plaintiff and one of the policyholders have a genetic relationship with the plaintiff's child.  The policy, however, covers (for UIM purposes) a person "related to you [the policyholder] by blood, marriage or adoption," not someone "who is related by blood to someone you are related to by blood."  Indeed, in the only case we have found to address this precise issue, Holi v. AIG Haw. Ins. Co., 113 Haw. 196, 197, 206 (Ct. App. 2007), the Hawaii Court of Appeals affirmed a lower court's ruling that UIM benefits were not available to a person who lived in the policyholders' household and had a child with the policyholders' daughter, who was not married to the injured person at the time of the accident.  The lower court had held that, because the injured person there a lacked a common ancestor with the policyholders, he was not related by blood to the policyholders and, therefore, he was not entitled to UIM

coverage. Id. at 206.[6] The injured person failed even to challenge this ruling on appeal. Id.

Here, the plaintiff requests an expansive definition of "related by blood." The policy language, however, by specifically adding "wards, step-children or foster children" to the persons included in "household member," makes evident that the meaning of "related . . . by blood, marriage or adoption" is not suited to further expansion beyond its usual and ordinary meaning. Otherwise, there would be no need to add those persons to the definition of "household member." See Balles v. Babcock Power Inc., 476 Mass. 565, 575 n.17 (2017) (contract should be interpreted not to render any provision superfluous).

We are, nonetheless, given some pause by Turner v. Lewis, 434 Mass. 331 (2001). In Turner, the Supreme Judicial Court faced a complaint for an abuse prevention order sought by the paternal grandmother of a child against the mother, who had never married the child's father. Id. at 331-332. The grandmother had custody of the child and, when the grandmother failed to produce the child at the mother's demand, the mother

---

[6] The plaintiff's complaint in Holi requested a judgment declaring that that he was "related by blood" to the policyholders. Holi, 113 Haw. at 198. In the plaintiff's opposition to the insurance company's motion to dismiss, he failed to argue that he was related by blood. Id. at 199. The lower court, nonetheless, addressed the issue and determined that the plaintiff was not related by blood. Id. at 200.

attacked the grandmother and threatened her with more violence. Id. The Supreme Judicial Court held that "related by blood," as used in G. L. c. 209A, § 1, was broad enough to include the relationship between the grandmother and the mother, and thus the grandmother could seek an abuse prevention order. Turner, supra at 334.

The reasoning of Turner, however, is not applicable here. The court in Turner was not applying the usual and ordinary meaning of the term "related by blood," but rather interpreting legislative language in light of the Legislature's intent "to broaden the definition of persons eligible to seek protection from abuse and domestic violence beyond the 'family' and to also include other persons having some 'family-like' connection." Turner, 434 Mass. at 334, quoting Kindregan & Inker, Family Law and Practice § 57.5 (2d ed. 1996). Noting the "importance of 'giv[ing] broad meaning to the words "related by blood,"' and considering 'whether the relationship puts the parties into contact with one another, even though they might not otherwise seek or wish for such contact,'" the court found the grandmother eligible to seek protection. Turner, supra, quoting Guidelines for Judicial Practice: Abuse Prevention Proceedings § 3:02 commentary (Dec. 2000). This was not because that result tracked the usual and ordinary meaning of "related by blood," but because "[t]he relationship [t]here meets the definition of

'family,' carrying with it all the risks and problems inherent in domestic violence." Turner, supra at 336.

Nor is Turner an outlier in this regard. In Silva v. Carmel, 468 Mass. 18, 23 (2014), when considering the meaning of persons "residing together in the same household," G. L. c. 209A, § 1, the Supreme Judicial Court again departed from the usual and ordinary meaning of that term in favor of implementing the Legislature's intent. As the court explained, the term "must be interpreted in the context of the statute's other definitions of '[f]amily or household members.'" Silva, supra. Finding again that "the statute's purpose[ is] to prevent violence in the family setting" and recognizing that the parties there -- who shared a household in a State-licensed facility for the developmentally disabled -- were "not in a family-like relationship with each other," the court declined to extend the protections of G. L. c. 209A. Silva, 468 Mass. at 23, 24.

By comparison to the Supreme Judicial Court's careful interpretations in Turner and Silva, the plaintiff's construction of "related by blood" is breathtaking in its breadth and yet remarkably disconnected to the asserted policy goal of covering a broad range of family relationships. Under the plaintiff's theory, any two persons with a common blood relative are themselves related by blood. Thus, a person with a niece is a blood relative of his or her brother-in-law's parents

(and grandparents and, for that matter, any genetic relatives). Indeed, a couple with a biological child would be surprised to find themselves to be blood relatives.

Nonetheless, the plaintiff's construction is surprisingly narrow. Had the plaintiff and his partner been a same-sex couple using an unrelated egg donor, the plaintiff would not be covered. Were the plaintiff and his partner raising a child adopted by his partner, the policyholder's daughter, the plaintiff would not be covered. Had the plaintiff been injured before the birth of the child, the plaintiff would not be covered. The plaintiff's construction places value on one particular flavor of family relationship, to the exclusion of many others.

Nor is it an answer to suggest (which the plaintiff does not) that the meaning of "related by blood" might someday be extended by judicial fiat to persons who lack even a biological relationship with a common third person. In the G. L. c. 209A context, every plaintiff promptly sees a judge, who is well qualified to make a case-by-case determination. Even where the plaintiff lacks the necessary relationship under G. L. c. 209A, § 1, there is value to having the plaintiff come to the court house and become aware of the resources available to a victim of abuse. By contrast, individuals need to know whether they are covered by another individual's policy to determine whether they

should obtain their own insurance, and insurance companies need to know who is covered to determine the proper premium and how to process claims.  In the insurance context, waiting until an accident and subsequent case-by-case determination of coverage by a judge is not an adequate solution.

Here, we are not interpreting legislative language in an attempt to best effectuate the intent of the Legislature. Instead, we are bound to apply the usual and ordinary meaning of the words "related by blood."  Those words denote a genetic relationship, and it is undisputed that the plaintiff has none with either of the policyholders.  Because the Superior Court judge correctly concluded, based on the undisputed facts, that the plaintiff was not "related by blood" to the policyholders in the usual and ordinary sense of those words, the judge properly granted summary judgment to the insurer.

<u>Judgment affirmed</u>.

McDONOUGH, J. (dissenting, with whom Lemire, J., joins). In Turner v. Lewis, 434 Mass. 331, 334 (2001), the Supreme Judicial Court concluded that two individuals who were in the identical material relation to one another as are Derrick Martins Oliveira and his biological son's maternal grandmother are "related by blood," as that phrase is read broadly to advance the protection of domestic abuse victims under G. L. c. 209A. Contrary to what the majority now holds, the same essential rules apply to the interpretation of that very same phrase in the insurance policy, and the statutory phrase from which it arises ("resident relative"), to advance the protection of victims of underinsured intoxicated[1] (and otherwise negligent) drivers who seek compensation for injuries through automobile

---

[1] According to Oliveira's sworn answer to an interrogatory, which is not disputed anywhere in the record before us, he was the victim of an act of an intoxicated driver. The driver of the vehicle in which he was a passenger was "highly intoxicated" and crashed the vehicle into a diesel fuel pump at a fire station in Charlestown. At least in this case, therefore, a broad reading of the phrase "related by blood" also would be consistent with the legislative policy of protecting and compensating victims of intoxicated drivers; a policy that, most notably, has prompted the Supreme Judicial Court to take a broad view of the common law of negligence in "dram shop liability" cases. See McGuiggan v. New England Tel. & Tel. Co., 398 Mass. 152, 155-162 (1986); Michnik-Zilberman v. Gordon's Liquor, Inc., 390 Mass. 6, 10-12 (1983); Cimino v. Milford Keg, Inc., 385 Mass. 323, 327 (1982); Adamian v. Three Sons, Inc., 353 Mass. 498, 500-501 (1968).

underinsurance coverage. G. L. c. 175, § 113L (5). The same result, therefore, should follow.

In Massachusetts, automobile insurance is both a statutory and policy driven creature. Every edition of the standard Massachusetts automobile insurance policy must comply with all applicable statutory provisions and be in a form approved by the Commissioner of Insurance (Commissioner).[2] See G. L. c. 175, §§ 2B, 113A. At the end of the day, however, it is the underlying statutory scheme that controls, for while the Commissioner decides what the terms of a standard policy will be, and his or her interpretation of the relevant statutes is entitled to deference, that interpretation cannot stand if it is in conflict with the relevant statutes. See Colby v. Metropolitan Prop. & Cas. Ins. Co., 420 Mass. 799, 806 (1995). I thus begin by looking at the policy and statute at issue in this appeal.

At the time of the accident, Oliveira resided as part of a single-family unit with his fiancée, their biological son (child), and the fiancée's biological mother (grandmother) and stepfather (step-grandfather). There were two motor vehicles in

_____

[2] The policy at issue in this case is the 2008 edition. Thus, the broad definition of "related by blood" enunciated in Turner, 434 Mass. at 334, preceded by roughly seven years the Commissioner's promulgation of the policy using the same phrase.

the household, both insured under the policy issued by The Commerce Insurance Company (Commerce) to the grandmother and step-grandfather.  Neither of the vehicles was involved in the accident, but the policy also included, in pertinent part, $250,000 per person in underinsured motorist (UIM) coverage. According to the policy, UIM coverage "will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance." The "people" who qualify for UIM coverage are identified in the policy and include the following:

"1.  You, while occupying your auto, while occupying an auto you do not own, or if injured as a pedestrian.

"2.  Any household member, while occupying your auto, while occupying an auto not owned by you, or if injured as a pedestrian.  If there are two or more policies which provide coverage at the same limits, we will only pay our proportionate share.  We will not pay damages to or for any household member who has a Massachusetts auto policy of his or her own or who is covered by a Massachusetts auto policy of another household member providing underinsured auto insurance with higher limits."  (Emphasis omitted.)

The terms "you" and "your" are defined in the policy as the person(s) to whom the policy is issued, as identified on the coverage selections page.  In this case, "you" and "your" referred to the grandmother and step-grandfather.  The term "household member," meanwhile, is defined as "anyone living in your household who is related to you by blood, marriage or

adoption.  This includes wards, step-children or foster children."

Under G. L. c. 175, § 113L (2), insurers in Massachusetts are required to make UIM coverage available for purchase at the option of the policyholder.[3]  The grandmother and step-grandfather exercised that option when they purchased the policy from Commerce.  In terms of who is eligible for UIM coverage, the statute, unlike the policy, does not use the phrase "household member."  Instead, the statute provides, in pertinent part, that someone in Oliveira's position is eligible for UIM coverage "from the policy of a <u>resident relative</u>" (emphasis supplied).  G. L. c. 175, § 113L (5).[4]  The statute does not define the phrase "resident relative."  Nor does it define the word "relative," which is the portion of "resident relative" that is relevant here.[5]

---

[3] UIM coverage was made optional by St. 1988, c. 273, § 46. See <u>Smart</u> v. <u>Safety Ins. Co</u>., 419 Mass. 144, 148 (1994).

[4] General Laws c. 175, § 113L (5), also provides (1) that the person seeking coverage cannot be a "named insured" on another policy providing UIM coverage, (2) that the person may only recover from the policy of a resident relative providing the highest limits of UIM coverage, and (3) if there are two or more such policies providing the same limits of UIM coverage, a pro rata contribution will be made from each.  None of these provisions are in dispute in this case.

[5] Commerce originally argued that Oliveira did not reside or live in the same household as the grandmother, but conceded that fact for purposes of summary judgment.

"When a statute does not define its words we give them their <u>usual and accepted meanings,</u> <u>as long as these meanings are</u> <u>consistent with the statutory purpose</u>. . . . We derive the words' usual and accepted meanings from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." (Emphasis supplied.) <u>Modica</u> v. <u>Sheriff of Suffolk County</u>, 477 Mass. 102, 104 (2017) (quotation omitted). The word "relative" is commonly understood to refer to a person related with another by blood or marriage. See <u>Andrade</u> v. <u>Aetna Life & Cas. Co</u>., 35 Mass. App. Ct. 175, 178 (1993), quoting Black's Law Dictionary 1289 (6th ed. 1990) ("'[R]elative' has been defined as 'a person connected with another by blood or affinity'"); Merriam-Webster's Collegiate Dictionary 1050 (11th ed. 2005) (defining "relative" as "a person connected with another by blood or affinity"). As previously noted, the policy defines the phrase "household member" as anyone living in the same household as a policyholder who is related to the policyholder by, among other things, blood or marriage. As an initial matter, therefore, the policy approved by the Commissioner appears consistent with the statute, at least to the extent relevant to the issue before us. See <u>Kanamaru</u> v. <u>Holyoke Mut. Ins. Co</u>., 72 Mass. App. Ct. 396, 401 (2008) (concluding that "household member" in insurance policy is consistent with "resident relative" in G. L. c. 175,

§ 113L [5], as "policy provides coverage for a wide range of relatives who are living in the household").  At the same time, however, this only leaves the court spinning in a circle, since the statute, like the policy, does not define "related by blood."

Which brings us to Turner, the only case in Massachusetts to consider, under any circumstances, the scope of the phrase "related by blood."[6]  There, a grandmother, who had custody of her biological son's ten year old biological child, sought a civil abuse prevention order against the child's biological mother.  Turner, 434 Mass. at 331-332.  To qualify for protection under G. L. c. 209A, the grandmother had to be "related by blood, marriage or household membership" to the mother.  Id. at 332.  The mother was neither married to the son nor a member of the same household as the grandmother.  Id. at 331.  The issue, therefore, was whether the grandmother and mother were "related by blood."  Id. at 333.  The Supreme

---

[6] The majority suggests that it unearthed one case that addressed the "precise" issue now before the court, Holi v. AIG Haw. Ins. Co., 113 Haw. 196 (Ct. App. 2007).  While the plaintiff's complaint in Holi, made the same "related by blood" argument that Oliveira makes here, the plaintiff, for unspecified reasons, did not raise that argument in his opposition to the insurance company's motion to dismiss, nor did he raise it on appeal.  See id. at 198, 199, 206.  As the issue was uncontested at both the trial and appellate levels, the Holi case, therefore, did not exactly "address" the issue.

Judicial Court concluded that they were, id. at 334, rejecting the narrow dictionary definition of the phrase embraced here by the majority.  Again, it is difficult to fathom how the result could possibly be different here, since the "relationship" at issue is materially identical.

To reach that seemingly incongruous conclusion, the majority suggests that different rules apply to the interpretation of the language of the insurance policy at issue here than applied when it came to the same language in the statute at issue in Turner.  Specifically, the majority suggests that here the court is necessarily restricted to construing the usual and ordinary sense of the phrase "related by blood," while in Turner, the Supreme Judicial Court construed that same phrase in light of the Legislature's intent in enacting the domestic abuse prevention statute -- not in its usual and ordinary sense.  With all due respect, however, the majority's suggestion is faulty on more than one level.

First, the court in Turner did not fail to consider the usual and ordinary sense of the phrase "related by blood."  The court detailed the interpretive rules it was applying at the outset of its analysis:  "When statutory language is clear and unambiguous, the statute must be given its plain meaning.  When the language is less clear, we must interpret the statute according to the intent of the Legislature ascertained from all

its words <u>construed by the ordinary and approved usage of the language</u>, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated" (emphasis supplied).[7] <u>Turner</u>, 434 Mass. at 333 (citations and quotations omitted).  And, of course, the court ultimately went on to apply the phrase in a fairly literal manner, when it concluded that the "paternal grandmother, through her son, is 'related by blood' to the child.  Likewise, the child and her mother are 'related by blood.'  Thus, the child is 'related by blood' to both parties, making the mother and grandmother 'related by blood' through that child."  <u>Id</u>. at 334.

Moreover, it is simply wrong to suggest, as the majority effectively does, that, unlike in <u>Turner</u>, the court is required to view the usual and ordinary sense of the phrase "related by blood" in a vacuum, without considering the underlying statute and its purpose.  "We must construe the words of the policy

---

[7] At the very least, the holding in <u>Turner</u> would suggest that the phrase "related by blood" is ambiguous.  See <u>James B. Nutter & Co.</u> v. <u>Estate of Murphy</u>, 478 Mass. 664, 669 (2018) ("[L]anguage is ambiguous if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one" [quotation omitted]).  In fact, the <u>Turner</u> court seems to have conclusively established as much, by effectively having found the phrase "related by blood" to be "less clear."  See <u>Turner</u>, 434 Mass. at 333.

according to the fair meaning of the language used, <u>as applied to the subject matter, as long as the statutory language or legislative policy of G. L. c. 175, § 113L, is not contravened.</u> This is true whether the language of [the] policy is considered ambiguous or explicit." (Emphasis supplied.) <u>Manning</u> v. <u>Fireman's Fund Am. Ins. Cos</u>., 397 Mass. 38, 40 (1986) (citations and quotation omitted). See <u>Massachusetts Insurers Insolvency Fund</u> v. <u>Premier Ins. Co</u>., 449 Mass. 422, 426-427 (2007) (terms of standard automobile insurance policy must be construed "according to the fair meaning of the language used, as applied to the subject matter" [quotation omitted], and in overall context of statutory insurance scheme). To that end, I find the analysis the court undertook in <u>Turner</u> to be both highly instructive and applicable in this case.

The court in <u>Turner</u>, 434 Mass. at 334, first noted that "[i]nterpreting the term 'related by blood' to include the relationship between the grandmother and the mother would be consistent with the Legislature's purpose in enacting c. 209A." Specifically, the court noted that the enactment of c. 209A "reflected [a] significant decision by the legislature . . . to broaden the definition of persons eligible to seek protection from abuse and domestic violence." <u>Id</u>. (quotation omitted). The same is true with respect to the statute that governs UIM coverage. As the Supreme Judicial Court has acknowledged, G. L.

c. 175, § 113L, "was enacted with the broad objective of ensuring that victims of automobile accidents would be adequately compensated for their injuries when the accidents are caused by the negligence of . . . motorists with insufficient or no liability coverage." Gleed v. Aetna Cas. & Sur. Co., 418 Mass. 503, 508 (1994) (quotation omitted).[8] As in Turner, therefore, the court must "bear in mind the importance of giv[ing] broad meaning to the words 'related by blood.'"[9] Turner, supra (quotation omitted).

The court in Turner, 434 Mass. at 334-335, also took "judicial notice of the social reality that the concept of 'family' is varied and evolving and that, as a result, different types of 'family' members will be forced into potentially unwanted contact with one another. The recent increases in both single parent and grandparent headed households are two examples

_____

[8] While Gleed involved a policy issued at the time that UIM coverage was compulsory, see note 3, supra, the same broad objective is still evident now that the coverage is optional. In fact, the court noted in Gleed, 418 Mass. at 508 n.4, that, notwithstanding the change in the statute, which had already occurred, its decision would have been the same.

[9] As G. L. c. 175, § 113L(5), is a civil, not a criminal, statute, the rule of lenity does not apply and the policy's phrase "related by blood" and statutory word "relative" do not have to be construed narrowly. See Commonwealth v. Dayton, 477 Mass. 224, 226 (2017) ("[W]here the language of a criminal statute plausibly can be found ambiguous, the rule of lenity requires that the defendant receive the benefit of the ambiguity").

of this trend." Further, the court concluded that "[t]hese trends require that [d]omestic violence statutes [such as G. L. c. 209A] offer coverage to a wide range of extended family relationships to fully reflect the reality of American family life." Id. at 336 (quotation omitted). The Supreme Judicial Court again took notice of this evolving trend two years later, when, in a different context, it stated: "The demographic changes of the past century make it difficult to speak of an average American family. The composition of families varies greatly from household to household. Massachusetts has responded supportively to the changing realities of the American family and has moved vigorously to strengthen the modern family in its many variations." Goodridge v. Department of Pub. Health, 440 Mass. 309, 334 (2003) (quotations and citations omitted). To these "changing realities" of the modern American family, the majority turns a blind eye, thereby limiting UIM coverage to accident victims belonging to conventional families -- to the exclusion of Oliveira, an unmarried parent and household member victimized by an underinsured intoxicated driver. As it happens, one of the areas in which the Supreme Judicial Court has responded supportively to these changing realities is in the context of UIM coverage and the scope of the phrase "household member." In Vaiarella v. Hanover Ins. Co., 409 Mass. 523, 526-527 (1991), the court recognized, "as have

courts in other jurisdictions, that, because modern society presents an almost infinite variety of possible domestic situations and living arrangements, the term 'household member' can have no precise or inflexible meaning."[10]  The analysis, therefore, "necessarily must proceed on a case-by-case basis." Id. at 527.

Disregarding Vaiarella's admonition of flexibility in defining "household member," as well as Turner's broad definition of "related by blood," the majority opts instead for inflexibility and conventionality.  In doing so, the majority spends a fair amount of time conjuring up what it terms "breathtakingly broad" or "surprisingly narrow" coverage scenarios that might follow if Oliveira is considered to be related by blood to his child's maternal grandmother.  Engaging

---

[10] This court previously noted in Kanamaru, 72 Mass. App. Ct. at 401-402, that the "language [in Vaiarella] implying flexible construction of the household member provision . . . arose in the context of determining which relatives actually resided in a household.  It does not alter the plain meaning of the definition of 'relative' as outlined in the policy."  There was no dispute in Kanamaru, however, that the plaintiff did not qualify as a "relative."  He was seeking coverage under his roommate's policy and admitted they were not related by blood, marriage, or adoption, and that he was not a ward, stepchild, or foster child of his roommate. See id. at 401.  As such, I consider the court's discussion in Kanamaru of Vaiarella and the word "relative" to be dicta.  I view the language in Vaiarella implying flexible construction of the phrase "household member" as being equally applicable to the "resident" and "relative" aspects of that phrase.

in such reductio ad absurdum can prove to be a risky venture. As suggested in <u>Vaiarella</u>, consideration of other coverage scenarios is best left for determination on a case-by-case basis, with more fully formed facts and records. With that said, I do not find the prospect of Oliveira qualifying for UIM coverage because he is considered to be related by blood to his child's maternal grandmother, with whom he resides, to be more breathtakingly broad than, for example, a person qualifying for UIM coverage under the policy issued to his or her third cousin, with whom he or she happens to reside. As the majority would have it, the phrase "related by blood" is more than flexible enough to allow for the latter, but not the former.

This is not to say that -- divorced from advancing a legislative policy -- there is not some appeal to the majority's holding. Understood in a vacuum, the phrase "related by blood" does seem to imply that two people must share a common bloodline, which is only possible if they are both descended from a common ancestor.[11] Indeed, the phrase "blood relative" has been defined just so. See Merriam-Webster Online

---

[11] "Ancestor" is defined as "one from whom a person is descended and who is usu[ally] more remote in the line of descent than a grandparent." Merriam-Webster's Collegiate Dictionary 46 (11th ed. 2005). See Black's Law Dictionary 100 (9th ed. 2009) ("common ancestor" means a "person to whom the ancestry of two or more persons is traced").

Dictionary, https://www.merriam-webster.com/dictionary/blood 20relative [https://perma.cc/5MUR-CY6U] ("blood relative" is "someone who has the same parents or ancestors as another person"); Black's Law Dictionary 1402 (9th ed. 2009) ("blood relative" is "[o]ne who shares an ancestor with another").  Of course, there is also a certain commonsense appeal to the notion that the biological father of a child is related, or, to use the language of the statute at issue here, a "relative" of, the maternal biological grandmother of the child, even if the father is not married to the biological mother of the child.  Or, to put it in the same terms as the majority, I think that an objectively reasonable person in Oliveira's position "would be surprised to find" himself to not be related to his child's maternal grandmother, just because he is not married to the child's mother.  The result seems even more surprising given that Oliveira resided in the same household and formed what can only be considered a "family," with, among others, the child, the child's mother, and the child's maternal grandmother.  In any event, this certainly militates in favor of coverage.  See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 225 (2011) (when court interprets standard automobile policy, it considers "what an objectively reasonable insured, reading the relevant policy language, would expect to be covered" [quotation omitted]).

One final point merits discussion.  The majority's holding extends beyond Oliveira and victims similarly situated.  On the record before the court, it can readily be inferred that the severe injuries Oliveira suffered in the accident have had a significant derivative impact, financially or otherwise, on his family, and, thus, his child, the policyholder's grandson, thus giving rise to a claim for loss of parental society.[12]  According to the policy, UIM coverage is only available for "[a]nyone else for damages he or she is entitled to recover because of injury to a person covered under this Part."  In other words, UIM coverage would only be available to the child if, once again, Oliveira himself qualifies as a "household member."  Over thirty years ago, the Supreme Judicial Court declared, "[o]urs is an era in which logic and compassion have impelled the law toward unburdening children from the stigma and the disadvantages heretofore attendant upon the status of illegitimacy."  Powers v. Wilkinson, 399 Mass. 650, 661 (1987) (overruling traditional rule of judicial construction and holding that "the word 'issue,' absent clear expressions of a contrary intent, must be construed to include all biological descendants," including those born out of wedlock).  See Goodridge, 440 Mass. at 334

---

[12] There is no mention in the record of whether a claim for loss of society has yet been pursued on the child's behalf against the intoxicated driver or against the UIM coverage under the policy at issue.

(Massachusetts has "repudiated the common-law power of the State to provide varying levels of protection to children based on the circumstances of birth"). It would seem anomalous, therefore, that coverage for the child's loss also could be denied merely because his father and mother did yet not marry -- as recently as a day or hours before the accident.

In this case, Oliveira and his child are "related by blood." Likewise, the maternal grandmother, through her daughter, Oliveira's fiancée, is "related by blood" to the child. Thus, the child is "related by blood" to both the maternal grandmother and Oliveira. And, as was the case in Turner, this makes Oliveira and the grandmother "related by blood" through that child. I consider this to be the fair meaning of the language used in the policy, as applied to the subject matter, consistent with the statutory language and legislative policy of G. L. c. 175, § 113L. As such, I would reverse the judgment, allow Oliveira's motion for summary judgment, deny Commerce's motion for summary judgment, and declare that Oliveira qualifies as a "household member" under the policy issued by Commerce to the grandmother and step-grandfather.